FRED C. SEXTON, Justice Ad Hoc*.
The defendants, Joseph Smith and Terry Brown, were charged by bill of information with attempted armed robbery, in violation of LSA-R.S. 14:64 and 14:27. After trial by jury, both defendants, were found guilty as charged. Defendant, Smith, was sentenced to 14 years at hard labor. Subsequent to the filing of a bill of information under LSA-R.S. 15:529.1 (Habitual Offender Law) the defendant, Brown, was sentenced to 25 years at hard labor. Defendants submit five assignments of error consolidated into three arguments.
FACTS
As related by the victims, the incident which led to the conviction of the defendants began at about 11:30 p. m. on September 8,1980. The victim, David Findley, was driving his motorcycle down Whitney Street in Algiers, with his fiancee’, Rendía Dickerson, riding as a passenger. They were hailed by the two defendants and they pulled over in response to the defendants’ motioning for them to do so. The defendants asked whether Findley “had any drugs.” When he told them no, the defendant, Joseph Smith, grabbed the handbrake of the motorcycle, and the defendant, Terry Brown, pulled a revolver on Findley and demanded that he be given “everything you got.” Brown then pulled the trigger of the pistol, which clicked but did not fire. The defendant Brown then pulled the trigger a second time, producing the same result, a click but no shot. The victim pretended to see a police officer and yelled, “Hey, cop” which caused their assailants to let the motorcycle go and hide the gun. The intended victims then fled the area and sought the assistance of a New Orleans police officer, August Santasuosso, who was known by Ms. Dickerson to live in that area. The victims and Officer Santasuosso denied any personal knowledge of each other prior to this incident.
Officer Santasuosso had his wife call for further police assistance and then took Mr. Findley with him in the officer’s personal car to look for the two assailants. After a brief search, Findley identified two men leaving a lounge as the two robbers and Officer Santasuosso made an arrest. During the arrest, the defendant Smith made an attempt to remove a firearm from his rear pocket. Seizure and examination of the pistol after the arrest revealed that it was a .22 caliber revolver, which contained only two live rounds and the casing of one spent round. The gun was loaded as follows: live round, empty cylinder, live round, empty cylinder, empty cylinder, spent round. This loading pattern would account for the failure of Brown’s weapon to fire at the victim, Findley.
The defense presented was that Findley and his girlfriend (who had married by the time of the trial in July of 1981) had stopped the defendants on the street and attempted to get them to buy drugs. The defendants allegedly declined the offer to buy and Findley persisted in his efforts to sell drugs. The defendant Smith testified that he grew tired of the sale effort and pulled a gun on the two to make them leave.
ASSIGNMENTS OF ERROR NOS. 1 AND 5
These assignments of error deal with the trial court’s refusal to permit defense counsel to make an inquiry of the witnesses Ms. Dickerson (Mrs. Findley) and Findley as to their prior use of drugs, as well as the refusal to permit a question as to Mrs. Findley’s possession of drugs on the night in question.
After having asked Ms. Dickerson (Mrs. Findley) whether she had been arrested and having an objection thereto sustained, counsel for one of the defendants asked her if she had ever used marijuana. After an objection was sustained, counsel then asked if the witness had used quaaludes, resulting *470 in another sustained objection. Counsel shortly thereafter then told the court:
“I’m going to ask her if she had quaa-ludes or preludes or any type of drug on her that night.”
An objection to this question was also sustained. It is pertinent to note that this witness testified that she heard no conversation with respect to drugs between her boyfriend and the defendants. She stated she was preoccupied trying to find something in her purse and did not specifically hear any of that conversation.
Later her boyfriend, the driver of the motorcycle, David Findley, had testified on direct that when the defendants had approached him originally they asked if he had any drugs. He stated he told them that he did not do drugs. On cross-examination he was asked if he had ever smoked marijuana. The resulting state objection was sustained. This witness had earlier been asked on cross-examination what was in his pockets at the time in question and he was allowed to respond in spite of the state’s objection.
It is apparent that the questions directed to the witnesses as to their prior use of drugs were irrelevant in the context asked. However, the proposed question with respect to whether or not Ms. Dickerson (Mrs. Findley) had drugs on her on the night in question was probably relevant, as it related to the defendants’ defense that they had been approached by these victims for the purpose of being sold drugs. The difficulty is that in originating this line of inquiry with each of these victims, defense counsel first asked each if he had ever been arrested, an obviously impermissible inquiry. Then counsel launched into the question of drug use as previously indicated. Note that no question with respect to Mr. Findley’s possession of drugs on the night in question was asked, though recall that he was asked what he had in his pockets. Also recall that he was the victim whom the defendants claim inquired of them about drugs.
While it appears the questions to Mrs. Findley concerning drugs in her possession at the time of the incident should have been allowed, the defense was able to inquire of the main victim as to what was in his pockets on the night in question. The defense compounded the situation by asking the question during an obviously impermissible line of inquiry. Furthermore the error was minor in the context made, and in the context of the entire trial. Our review of the record convinces us that defendants received a fair trial and that this error did not result in any prejudice to them, and is therefore insufficient to require a reversal. LSA-C.Cr.P. Art. 921.
These assignments of error lack merit. ASSIGNMENT OF ERROR NO. 2
The defendant Smith urges that the refusal of the court to permit a police officer witness to examine Smith’s forearm and to testify to the absence of “track marks” is in error.
The defense sought to introduce the testimony of Officer Michael Cates, concerning the presence or absence of “track marks” (which would evidence repeated injections ostensibly of illegal drugs) on the forearms of the defendant. Cates was qualified to the court as to his knowledge of those type marks, but the trial court on its own motion ruled that the inquiry was irrelevant.
The defendant concedes that he later took the stand and subjected his arms to the jury’s view. But the defense contends that the additional testimony that there were no indications that the defendant was a user of narcotics would have been very important to the defense case.
As the victim Findley had alleged that the defendants initially asked him if he had any drugs when they attempted to rob him, evidence of track marks, or the lack thereof may have been slightly relevant to show that the defendant did or did not use drugs. However, common sense tells us that this evidence would have been far from conclusive in this regard. Furthermore, even if the defendant was able to prove conclusively he did' not use drugs such would not necessarily discredit the victim’s testimony, as the defendants’ alleged statement seeking drugs could have been a ruse.
*471 Assuming arguendo that Officer Cates’ testimony regarding the supposed lack of track marks on the defendant Smith’s arms would have been relevant, it is difficult to see how the defendant was substantially prejudiced by the refusal to allow the defendant to show his arms to this officer. As we have noted, the defendant was allowed to display his arms to the jurors and presumably they were devoid of anything resembling track marks, which the jury was able to observe.
The trial judge is vested with great discretion with respect to the relevancy of evidence and it should not be disturbed absent a showing of clear abuse. State v. Hathorn, 395 So.2d 783 (La.1981). Furthermore, rulings should not be reversed because of error which does not affect the substantial rights of the accused. LSA-C. Cr.P. Art. 921. In short, it does not appear that a substantial right of the accused was affected.
This assignment of error lacks merit. ASSIGNMENTS OF ERROR NOS. 3 AND 4
Assignments of error three and four deal with the state’s cross-examination of the defendant Smith with regard to his probationary status at the time of the trial, and with a comment on this probationary status made during the state’s rebuttal argument.
During direct examination, the defendant Smith denied having been previously convicted of a crime. The District Attorney, on cross-examination, asked him if he still contended that he had never been convicted. The defendant, after examining state’s exhibit S-4 (some type of record of defendant’s prior conviction) admitted that he had been convicted. Then the state asked, “Isn’t it a fact that you are on probation right now?” causing the defense to object and ask that the jury be removed. The court overruled the objection holding that the state could continue the line of inquiry because by denying any convictions, the defendant had “opened the door” to impeachment. The jury was returned and the following ensued:
Q. Mr. Smith — so you now admit that you’ve been convicted of a crime?
Now that it came back to my memory-A.
It came back to your memory? You had forgotten it when you first told the jury that you had not been convicted? Q-
A. Yes, sir.
Q. You’d forgotten. Did this conviction not occur on June 9, 1980?
A. June 9, 1980. No.
Q. Not the crime, now — the day you were convicted.
A. I’m not aware of the date.
Q. Let me let you look at the paper again. Would you take a look at that. Is that what the paper says?
A. Yes, sir.
Q. June 9. That’s about three months before this incident isn’t it ... three months before this incident. And yet you forgotten when you testified before?
A. No, I had forgotten at this moment.
Q. Well, you had a trial in that case, didn’t you?
A. Yes, I did.
* Sfc # * ‡ &
Q. And isn’t it a fact that today, as you sit here, you are on probation for possession of stolen property?
By: Mr. Dosky — Note an objection.
A. Yes, sir.
Then in the state’s rebuttal argument (while the prosecutor was explaining to the jury that the judge would charge them that credibility of witnesses was within their province and that they should examine the defendant’s credibility) the prosecutor commented that the defendant was trying to lie his way out of his present circumstance. The District Attorney went on further to remind the jury that the defendant had been on trial only three months before this incident and stated, “can you conceive of someone who’s on probation this very moment” when there was an objection which was overruled. The District Attorney con *472 tinued by saying, “who is on probation at this very moment, as a result of a trial in which he was convicted of possessing sixteen stolen hotel keys, forgetting about that?”
State v. Jackson, 307 So.2d 604 (La.1975), addressed the issue of whether the defendant may be examined about the details of a crime which is being used to impeach his credibility. In Jackson, this court reaffirmed that evidence of any conviction (including misdemeanors) is admissible to impeach the credibility of the witness and went further to establish a general rule allowing inquiry into the details of previous convictions.
However, Jackson is not without its limits. In State v. Johnson, 368 So.2d 719 (La.1979), this court held that inquiry into a probationary status should not normally be permitted, as it was without purpose. The rationale allowing inquiry into the details of previous crimes is to test credibility, and inquiry into probationary status therefore has no relation to credibility. However, in Johnson the inquiry was limited and not sufficiently prejudicial as to require a reversal. Likewise in this case the inquiry was limited. Unlike Johnson though, the inquiry here was extremely relevant to the defendant’s contention that he had “forgotten” his conviction which occurred only three months previously.
Obviously the purpose of the District Attorney’s questions regarding probation was to show that because of the recent and continuing nature of defendant’s probationary status, his claim that he had “forgotten” his recent conviction was an obvious attempt to mislead the jury. Defendant opened the door for this area of inquiry by denying the previous conviction and then compounding this falsehood by contending he had forgotten the conviction.
Furthermore, the prosecution’s argument to the jury, in the context made, was an appropriate comment on the evidence. The defendant had denied a previous conviction, and then, when faced with it, contended he had forgotten that recent conviction. When the defendant takes the stand his credibility is to be judged just as that of any other witness. The argument was appropriate to remind the jury of a matter to be taken into consideration in evaluating the defendant’s testimony.
These assignments of error lack merit.
For the reasons assigned, the defendants’ convictions and sentences are affirmed.
AFFIRMED.
DIXON, C. J., concurs.

 Judges Fred C. Sexton, Jr., and William Norris, III, of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, Jr., and Harry T. Lemmon.