KLEES, Judge.
STATEMENT OF THE CASE
The defendants, Eugene Tobias and John W. Simmons, were indicted by a grand jury on December 3, 1981, for the second degree murder of Michael Henry. They were tried on June 15 and 16,1982, and found guilty as charged by a unanimous vote of the twelve member jury. Defendants were sentenced to life imprisonment, without benefit of probation, parole or suspension of sentence, on June 30, 1982. Oral motions for appeal were entered on that date and supplemented by written motions filed July 2, 1982.
STATEMENT OF FACTS
On September 19, 1981, at about 4:00 P.M., Michael Henry was shot outside of Marie’s Bar on the corner of Felicity and Magnolia. He was transported to Charity Hospital where he died at approximately 5:20 a.m.
The initial police investigation failed to turn up any eyewitness to the shooting. However, a subsequent contact from Tyrone Doyle, a cousin of the victim, provided the names of the defendants as suspects and also the identity of an eyewitness, Percy Taylor. The defendants were identified by the street names of “Craft” (John Simmons) and “Gene” (Eugene Tobias), and were picked from a photographic line-up by Taylor.
Veronica Day, an employee of Marie’s Bar, testified that she had arrived at work at seven minutes to 2:00. She saw the victim, whom she did not know, in the com *402 pany of “Craft” and “Gene”. She then identified the defendant, John Simmons, as “Craft” and Eugene Tobias as “Gene”. At that time, the three were standing on the Magnolia Street side of the barroom and the victim was arguing with the two defendants.
Marie Jackson, the owner of Marie’s Bar, was inside at the time of the shooting. She went to the door and saw who was shot. She had seen the victim earlier inside the bar with the two defendants, who were regular customers.
Percy Taylor testified that he was driving his cab and stopped for a break outside of Marie’s Bar. He was talking with the people outside when he saw Scott being chased down the street by “Craft” and “Gene”. He then received a phone call inside the bar; it was Phillip Scott asking Taylor to come get him because “Craft” and “Gene” were after him. Taylor went back outside and resumed his conversation. “Craft” and “Gene” returned and went around the side of the bar. Taylor then heard an argument and, looking around the corner, saw “Craft”, “Gene” and the victim fussing. Someone named Jacob attempted to intervene. The argument had eased up when “Gene” took a wine bottle and faked it at the victim, who threw up his hands. “Gene” then taunted him about being scared. The bystanders decided the argument was fading, and Taylor got in his cab to leave. “Craft” pulled a pistol, threw it to his face and said, “Now, run your head now, bitch.” “Gene” said, “Keep on talking, you’re going to die, bitch.” Jacob hollered, “Bro, that ain’t called for. You don’t have to do none of that.” Then “Craft” shot the victim. The defendants backed up down the street with the gun pointed and the onlookers left quickly. Taylor then left, picked up Phillip Scott and returned to the scene. Scott was then confronted by “Craft” and “Gene” who had changed clothes and come back. Scott backed towards the police and everyone assumed he was going to tell the police what happened. Taylor then left. The witness identified the two defendants in the courtroom and named “Craft” — John Simmons — as the one who shot the victim.
John Simmons testified in his own defense that he was at Marie’s from 10:00 to 11:00. He and Eugene then left, picked up two quarts of beer and went into the project to finish working on their parade equipment for the Young Men Olympics Social Aid Club. This took place at Eugene’s house, where Eugene lived with his mother, father, sister and niece. They later heard a shot and decided to walk around the corner and see what had happened. After about twenty minutes, they returned to Eugene’s house and Simmons left to go home. The defendant admitted to pleading guilty to simple battery in 1976 and possession of stolen property in 1979. He denied ever owning a gun and never saw Eugene with one. He denied ever telling a girl named Debra that he would pay $500 to anybody who would say he wasn’t there.
SUFFICIENCY OF EVIDENCE
The defendants were convicted of second degree murder which is defined in LSA-R.S. 14:30.1 as: The killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Evidence presented at the trial established that Michael Henry died from a gunshot wound to the head which was fired at close range. Two witnesses testified that Henry was seen in the company of the defendants several hours before he was murdered. An eyewitness testified that he saw the actual shooting, that both defendants were harassing the victim and that defendant, Simmons, fired the fatal shot.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), any rational trier of facts, viewing the evidence in the light most favorable to the prosecution, could have found in this case that the state proved the essential elements of the crime beyond a reasonable doubt. See State v. Fuller, 414 So.2d 306 (La.1982).
ASSIGNMENT OF ERROR NO. 1
Assignment of Error No. 1 was neither briefed, nor argued, accordingly we consider it abandoned.
*403 ASSIGNMENT OF ERROR NO. 2
Defendants contend that the trial judge erred in overruling defense objections to the prosecutor’s questioning the defendant as to alleged attempts to bribe witnesses when there was no showing that any such attempts took place.
While an attempt by an accused to induce a witness to testify falsely or to fabricate testimony may be introduced in evidence against the defendant, there must be some evidence to connect the accused therewith or to show that the attempt by a third person was made with the authorization of the accused. State v. Graves, 301 So.2d 864 (La.1974). In the instant case, outside of some vague allusions to witnesses being afraid of the defendants, there was no testimony introduced to show any attempt at bribery and/or intimidation. The prosecutor’s questions were unsubstantiated and alluded to a person who never appeared at the trial. We find that the prosecutor’s questions were improper and the trial court should not have permitted them, however, they still would not constitute grounds for reversal. The objectionable exchange was very limited and, in view of the eyewitness’ testimony to the crime, it is unlikely to have influenced the jury in reaching its verdict.
ASSIGNMENTS OF ERRORS 3 AND 4
Defendants contend that the trial court erred in permitting the prosecutor to question the defendant, Simmons, about the circumstances surrounding his prior convictions and to question the defendant’s mother as to prior charges against the defendants. It is well established that the state may cross-examine a witness (including a defendant testifying on his own behalf) as to the details of a prior offense for which the witness was convicted. State v. Jackson, 307 So.2d 604 (La.1975); State v. Brown, 371 So.2d 746 (La.1979). Such inquiry, however, should be limited to questioning relative to prior convictions and does not create a standard for questioning a witness about prior arrests or charges. State v. Connor, 403 So.2d 678 (La.1981). The questions posed by the prosecutor tended to extend beyond the range of the trial court’s permissible discretion. Defense counsel’s objection should have been sustained.
This improper questioning does not mandate reversal, however, as the record reveals overwhelming evidence of the defendant’s guilt and there is no reason to find that the improper questioning was a decisive factor in the jury’s deliberation.
Accordingly, the defendants’ convictions and sentences are hereby affirmed.
AFFIRMED.