445 So.2d 1171 (1984)
STATE of Louisiana
v.
Bobby Ray WILLIAMS.
No. 82-KA-1824.
Supreme Court of Louisiana.
January 16, 1984.
Rehearing Denied February 15, 1984.
*1174 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., James C. McMichael, Scott J. Crichton, Asst. Dist. Attys., for plaintiff-appellee.
Donald R. Minor, Jeanette G. Garrett, Indigent Defender Office, Shreveport, for defendant-appellant.
DIXON, Chief Justice.
Defendant, Bobby Ray Williams, was indicted for aggravated rape (R.S. 14:42), aggravated crime against nature (R.S. 14:89.1), attempted first degree murder (R.S. 14:30) and armed robbery (R.S. 14:64). His trial in January, 1981 ended in a mistrial when the jury could not reach a verdict. In November, 1981 the defendant was tried, under a severed indictment, on two counts: aggravated rape and attempted first degree murder.
The defendant was found guilty on both counts, the jury voting ten-two, and was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence for the aggravated rape charge, and to fifty years for the attempted murder charge. The sentences are to run consecutively. The defendant appeals both his conviction and sentence, arguing fifteen of twenty-two assignments of error.[1]
The victim related the following facts. On Friday night, May 24, 1980, accompanied *1175 by her date and two other couples, she patronized the Florentine Club near the Oakland Street Apartments in Shreveport. At about 2:00 a.m. she left the club alone, choosing to go home rather than continue partying with her companions. As she approached the car, David McCall stopped her. He put a gun close to her face and ran with her to a wooded area behind the Oakland Street Apartments.
As McCall apparently attempted to rape the victim, the two struggled and the victim was able to shoot her attacker in the chest. The two continued to struggle until a second man entered the struggle and took the gun away. The victim then testified that this second man threw her up against the hill, shot her in the abdomen, then began hitting her around the face and head with the butt of the gun.
This second man then pulled her farther up the hill to a more wooded area and required that she perform oral sex, then raped her. After the rape, the victim claims that her rapist helped her to dress, and the two of them began to look for car keys she had lost in her struggle with David McCall. When the keys were not found, the rapist took her watch and put the gun to her forehead. She convinced him not to shoot her.
A resident of the apartment buildings came around the corner and asked what was going on. The victim told him that she and the man with her had been attacked. The two men helped her to the front of the building where she waited for the police and for an ambulance to arrive.
The defendant testified that he had been with David McCall earlier in the evening, but had separated prior to this incident, with plans to meet later. He said that he went looking for McCall and came upon the victim already shot and raped. He then heard McCall call him and saw that he had been shot. He went to get help, but was not successful. He returned and began to help the victim get dressed. He could not find her glasses, but he found her clothes. The defendant and the victim then went around to the front of the building. A resident of the apartment complex drove up and the defendant went with him to phone for an ambulance. The defendant said he then went to tell McCall's family that he had been shot.
The deputy coroner for Caddo Parish testified that the victim had had recent intercourse and had lacerations to the head, bruises on her body and had a gunshot wound in her abdomen.
Assignment of Error No. 1
Defendant contends that the trial court erred in denying his request to be provided with information concerning the victim's medical history. Defendant learned that after his first trial, and before his second trial, the victim had undergone psychiatric treatment. The defendant felt that this treatment might influence the victim's testimony, or bear upon her credibility, and sought to be provided with information concerning this medical history.
The prosecutor contested the request, arguing that the history was not relevant. The trial judge, although he thought the evidence was probably irrelevant, nevertheless examined, in camera, a statement made by the victim concerning her treatment to determine if the statement was exculpatory.
The defendant is denied a fair trial when the prosecution withholds evidence which has been requested and which is favorable to the defendant. State v. Perkins, 423 So.2d 1103, 1107 (La.1982). The record does not show whether or not the court found the information to be favorable to the defendant. The defendant, apparently, did not request the result of the court's in camera review. When counsel proceeded to trial without an answer to his request for discovery, he abandoned his objection. State v. Brown, 421 So.2d 854, 857 (La.1982).
We cannot determine if the trial court erred in his preliminary denial of the discovery request. We cannot say that there was error.
*1176 Assignment of Error No. 2
The defendant contends that the lower court erred in denying his motion to sequester the jury. He argued that this trial was likely to receive extensive press coverage, as the first trial of this case had received extensive coverage. He sought to protect the jurors from learning that there had been a prior trial and from being prejudiced by that information.
The trial court has discretion to decide whether or not to sequester a jury in a non-capital case. C.Cr.P. 791(C).[2] The purpose of sequestering jurors is to protect them from outside influence and from basing their verdict upon anything other than evidence developed at trial. State v. Marchand, 362 So.2d 1090 (La.1978).
At each recess the trial court admonished the jury not to discuss the case, and not to read, view or listen to news reports or accounts of the trial. There is no showing that the jury disregarded the judge's instructions and thereby prejudiced the defense. State v. Washington, 430 So.2d 641, 646 (La.1983).
Assignment of Error No. 9
The defendant contends that the lower court erred in denying his challenge for cause of prospective juror Cook. Since defendant exhausted his peremptory challenges, he may complain of a ruling refusing to sustain a challenge for cause made by him. C.Cr.P. 800.[3]
The defendant challenged prospective juror Cook for cause under C.Cr.P. 797(2) and (3).[4] The defendant argued that Cook could not be impartial because he has two teen aged daughters and expressed some concern for their welfare. The defendant also challenged Cook because of an employment relationship between the prosecutor and a law firm that Cook previously used.
The trial court ruled that concern for teen aged daughters is not a sufficient showing of partiality to support a challenge for cause. He also noted that Cook probably did not even know that the prosecutor had done work for him before it was brought to his attention during the voir dire. The two had never met, and Cook did not recall seeing the prosecutor's name on any papers.
There was no abuse of discretion in denying the challenge. State v. Welcome, (La.1983) (No. 82-KA-2232).
Assignment of Error No. 10
The defendant contends that the lower court erred in denying the motion for mistrial based on the state's systematic exclusion of blacks from jury service. Of the eight peremptory challenges utilized by the state, five were used to exclude black jurors. The state additionally challenged two black jurors for cause after they expressed bias in favor of the prosecution. The defendant notes that the office of the district attorney was aware that the jury in the *1177 first trial was split along racial lines in their inability to reach a verdict.
This court continues to adhere to the standard established in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), realizing that the defendant is saddled with a difficult burden. State v. Eames, 365 So.2d 1361, 1367 (La. 1978). The defendant must show systematic exclusion of blacks from juries over a period of time. State v. Hayes, 414 So.2d 717 (La.1982); State v. Edwards, 406 So.2d 1331 (La.1981). The defendant in this case has not shown a systematic exclusion of blacks, nor a long-standing policy of the office of the district attorney to exclude black jurors. Without such a showing of systematic exclusion, the state is entitled to exercise its peremptory challenges as it chooses. State v. Berry, 391 So.2d 406 (La.1980).
Assignments of Error Nos. 11 and 15
The defendant contends that the lower court erred in denying his motion for a mistrial made on two occasions; after the complainant referred to the defendant's previous trial in her testimony, and after the prosecutor referred to the defendant's previous trial.
The prosecution and the defense agreed that there would be no mention of the first trial during the second trial, to avoid any prejudice which might arise. The defense was concerned that a reference to a prior trial necessarily leaves a suggestion of a prior conviction that has been overturned, and evokes sympathy for the victim who now must go through the ordeal of a trial for a second time. The evidence was marked anew, and the witnesses were all instructed to avoid any reference to a prior trial.
During the cross-examination of the victim, the following exchange occurred:
"Q. Did you not identify this same photograph that you say is number five, in State Exhibit 3, in January of this year as who
A. In the last trial?
Q. you identified in this photograph?"
The second reference was made by the prosecutor during his direct examination of a witness:
"Q. Now, do you recall testifying at the last trialexcuse methe last hearing that you had talked with Mr. Minor at CCI and that you knew who he was and who he represented; is that correct?"
There were other references to the prior trial, during McCall's testimony, to which no objection was made.
The trial court correctly ruled that neither remark called for a mistrial. The trial judge determined that the defendant's right to a fair trial had not been breached because neither remark informed the jury that the accused had previously been convicted for the charge for which he was currently on trial.
In State v. Albert, 381 So.2d 424, 428 (La.1980), the prosecutor referred to prior trials during the voir dire examination. This court found that that remark was not reversible error because it did not pinpoint the defendant as being involved in the previous trials and because there was no reference to a conviction. Any prejudice which might have resulted was not sufficient to prevent a fair trial.
The same is true in this case. The references to a prior trial did not identify the defendant in the prior trial, and did not refer to a conviction. In addition, the trial court agreed to include in the jury instructions an admonition to ignore all references to any prior trials. The defendant refused the offer, and suggested no other relief. Denial of the motion for a mistrial was not an abuse of discretion.
Assignment of Error No. 12
Defendant contends that the lower court erred in restricting defense questioning of Detective Foster, the purpose of which was to reveal bias on his part. The defendant sought to show that this witness, the police officer in charge of investigating this case, wanted to have this defendant convicted for this crime no matter what the evidence showed.
*1178 The prosecutor objected to the questioning as irrelevant and related to collateral matters. The trial court sustained the objection. R.S. 15:492[5] permits questioning of a witness as to a particular fact tending to show bias, but that bias must be personal against the defendant, rather than general in nature. State v. Bretz, 394 So.2d 245, 252 (La.1981).
The witness stated that he had known Bobby Ray Williams for several years. It is possible that the witness had developed a personal bias against the defendant over those years. The defendant should have been allowed to develop this bias as possibly influencing the veracity of the witness' statements.
Although there was error on the part of the trial court, we will not reverse because we find the error harmless. The witness was an investigating officer, not an eyewitness to the crime. He testified at trial primarily to identify the state's exhibits. There was no suggestion by the defense that evidence had been falsified.
The witness did relate the events of the evening as told to him by the victim and as told to him by the defendant. His retelling of their stories was essentially identical to their respective versions with one major exception. The defendant had claimed that the shirt and underwear he was wearing when he was arrested were not the shirt and underwear he was wearing on the night of the crime two days earlier. The witness testified that the defendant had told him that he was wearing the same clothes on both dates.
The defendant was not denied a fair trial by the trial court's failure to allow cross-examination designed to show bias on the part of this witness. C.Cr.P. 921.[6]
Assignment of Error No. 14
The defendant contends that the lower court erred in allowing the state to impeach one of its key witnesses and to question him about testimony he gave at the defendant's first trial and about statements he made to the police.
The state called David McCall to the witness stand. McCall had been a key witness for the state in the first trial of this defendant; as a codefendant, McCall was an eyewitness with very damaging testimony. After that trial, McCall was sentenced to serve forty-five years at hard labor for his part in the crime pursuant to a guilty plea he filed on the first day of this defendant's first trial.
When McCall took the stand he was asked, "Do you recall seeing the victim?... Did you approach her? ... Was Mr. Bobby Ray Williams with you at that time?" To which McCall responded, "No, sir, he wasn't." To the question, "Did he have any part to play in that offense?" McCall answered, "No, sir."
The state claimed surprise and sought to impeach its witness under R.S. 15:487.[7] The defendant objected, noting that the state has an obligation to interview a witness prior to trial to determine how that witness will testify. The prosecutor stated that he had not talked to McCall, but had relied on the testimony McCall gave at the prior trial ten months earlier. (The prosecutor who had handled the first trial did not handle the second trial).
The defendant submits that it was highly unfair for the state to be allowed to claim surprise when it made no effort to interview *1179 the witness prior to the retrial of the defendant.
In State v. Spotville, 308 So.2d 763, 765 (La.1975), this court allowed the state to claim surprise when the prosecutor had in his possession a typewritten document signed by the witness and given to police officers the day after the crime was committed. This court stated that the prosecutor justifiably believed that the witness would testify in accordance with the earlier statement.
McCall had testified in court, under oath. He gave essentially the same story to police detectives shortly after his arrest. The prosecutor could reasonably expect that the witness would give the same testimony in the second trial.
In this assignment of error the defendant contends that the manner of impeachment was improper. The defendant argues that once the witness admitted that he had made the prior inconsistent statements it was error for the state to present the detailed contents of those statements before the jury.
R.S. 15:493 provides the guidelines for admissibility of a prior contradictory statement.[8] Evidence of that statement is not admissible when the witness distinctly admits making the prior statement. It is, however, permissible to elicit the general contents of the prior statement to inform the jury of the nature of the contradiction. State v. Redwine, 337 So.2d 1041 (La.1976).
The prior inconsistent testimony is relevant only to the witness' credibility and is not to be used as substantive evidence of the defendant's guilt. The defendant is entitled to a limiting instruction regarding the use of the statement, but must request such a statement from the court. State v. Kimble, 375 So.2d 76, 79 (La.1979). The defense must request the limiting instruction, or he will have waived his objection. State v. Allien, 366 So.2d 1308, 1311 (La.1978). The trial judge is not free to comment on the evidence without such a request. The court did not admit into evidence the transcript of the statements the witness gave to the police officers because the defendant admitted making, in substance, those prior inconsistent statements. R.S. 15:493.
This assignment lacks merit.
Assignments of Error Nos. 16 and 17
The defendant contends that the lower court erred in allowing the state to introduce a transcript of David McCall's guilty plea and sentencing, and erred in allowing the state to elicit testimony concerning McCall's guilty plea. The defense argues that the impeachment was not proper because it went beyond what is permissible under R.S. 15:487 and because a proper foundation had not been laid.
The state admits that there was not a proper foundation, but argues that the error was harmless as it was not prejudicial to the defendant's rights.
McCall had changed his not guilty pleas to pleas of guilty. He then testified against defendant in defendant's first trial, and at this, the second trial, attempted to exonerate defendant. The reason for the introduction of the transcript of the guilty plea and sentencing is obscure. It was probably intended to show that the state had not violated a plea bargain with McCall. At any rate, defendant was not prejudiced in any way. McCall candidly admitted he would lie if he thought it to be in his interest. He made it clear that the truth was not in him. The transcript of McCall's plea and sentence did not relate to defendant's guilt or innocence.
If error, it was harmless.
*1180 Assignment of Error No. 18
The defendant contends that the lower court erred in allowing the state to go into the details of his prior conviction while cross-examining him. The defendant urges that the court reverse the holding in State v. Jackson, 307 So.2d 604 (La.1975), that allows inquiry into the details of a prior offense, as contrary to R.S. 15:495.[9] He argues that the questioning did not impeach his credibility, but depicted him as a man of violence.
"This court has held in State v. Jackson, 307 So.2d 604 (La.1975) that the prosecution may not only establish prior convictions of a witness, but may also cross examine that witness about the details of the prior convictions in order to show the true nature of the offenses. This rule has been extended also to defendants who take the stand in their own behalf. State v. Connor, 403 So.2d 678 (La.1981). This rule is not, however, without limits. This court has held that the extent into which this inquiry into past convictions can be permitted is dependent upon each individual case. The trial judge has great discretion in determining the type of inquiry which will be allowed and his discretion will not be disturbed on appeal absent a showing of abuse. State v. Brown, 371 So.2d 751 (La.1979)." State v. Chaney, 423 So.2d 1092, 1100 (La. 1982).
In the instant case the prosecutor sought to impeach the testimony of the defendant with the following line of questioning:
"Q You have been previously convicted of the offense of aggravated battery is that right?
A Aggravated battery.
Q The offense was committed with a knife?
A With a knife.
Q Butcher knife?
A Butcher knife.
Q You stabbed the victim Taft Harold with a butcher knife?
A The only reason, he tried to hurt me, came to my house to hurt me where I was living at.
Q How old was Mr. Harold at that time?
A Maybe about 50. I don't know exactly. Maybe about 50-something.
Q Sixty or 65 would be closer, wouldn't it?
A Maybe so. I didn't know how old he was."
Only limited questioning as to the facts of prior convictions is permissible. Minor details of far-ranging and irrelevant matters such as conditions of probation, alleged but uncharged offenses, and charges dropped in response to a guilty plea may not be used to cast doubt on a defendant's credibility. State v. Connor, 403 So.2d 678, 680 (La.1981).
The prosecutor's questions did not go beyond the facts necessary to show the true nature of the offense. The extent to which an inquiry into prior convictions is permitted depends on the facts of each case; the trial court has great discretion to control the length and depth of the examination. State v. Neslo, 433 So.2d 73 (La. 1983).
This is no merit in this assignment.
Assignments of Error Nos. 19 and 20
The defendant contends that the lower court erred in allowing rebuttal evidence concerning blood stain analysis, and erred in accepting Ray Herd as an expert in the area of blood stain analysis.
The state has the right to rebut the evidence adduced by the defendant. R.S. *1181 15:282.[10] In a criminal prosecution the state does not and cannot know what evidence the defendant will use until it is presented at the trial of the case. It is for this reason that the state is given the right of rebuttal. State v. Monroe, 205 La. 285, 289, 17 So.2d 331 (1944).
Rebutting evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. Id. The fact that the testimony in question tends incidentally to strengthen the case originally presented by the state does not render it inadmissible for the purpose for which it was offered and admitted. State v. Howard, 120 La. 311, 319, 45 So. 260 (1907).
The defendant took the stand and was questioned by the district attorney:
"Q You didn't have any blood on you?
A I had some blood on my (sic) when I helped her off the ground. She rubbed against me.
Q Other than the blood you got on you from the victim, you didn't have any blood on you?
A No, sir, I didn't."
There had been prior testimony concerning the blood on the defendant's shirt, but no witness had heretofore discussed how the blood got onto the shirt. The defendant sought to exculpate himself by explaining that the blood on his shirt came from the victim rubbing against him as he assisted her. The state sought to show that the blood more probably was splattered onto the defendant while the defendant was striking the victim.
The state may not reserve part of its case-in-chief for rebuttal testimony, after the defense has put on its case. This is contrary to statute, to ancient jurisprudence and to rules of fair play. State v. Turner, 337 So.2d 455, 458 (La.1976). While a clearer case is presented when the counsel for the defendant adduces the exculpatory statement, the state is entitled to present evidence in rebuttal when new facts are put in evidence by the defendant. R.S. 15:282.
Control of evidence presented by the state on rebuttal is within the sound discretion of the trial judge whose ruling will not be disturbed except in extreme cases as where the evidence has been kept back deliberately and for the purpose of deceiving and obtaining undue advantage of the defendant. State v. Hills, 354 So.2d 186, 191 (La.1977).
The state did not purposefully hold back this rebuttal evidence to obtain undue advantage of the defendant. Nor was the defendant unduly prejudiced by this testimony. See State v. Turner, supra at 458. The victim testified during the state's case-in-chief that the defendant struck her head repeatedly with the butt of his gun, and that her head was bleeding during the beating. The trial judge did not abuse his discretion in permitting the state's rebuttal.
The defendant complains that the court erred in accepting Ray Herd as an expert in blood spatter analysis.[11]
Ray Herd is an experienced, educated and respected criminalist. Blood spatter analysis seems to be a relatively new and fashionable branch of criminalistics, a knowledge of which purportedly enables a witness to examine blood stains and testify about what kind of blow or wound caused them.
*1182 Herd's testimony about blood spatter analysis was rather vague. He testified about high speed spatters (bullet caused), low or medium speed spatters (in wounds caused by blows) and concluded his qualifying testimony by saying that a person with a background in physics could learn the subject in a week.
The evidence he examined was a few bloodstains (pencil eraser size) in a cluster on the sleeve of defendant's shirt. Defendant had explained the presence of blood on his clothing by saying that some rubbed onto him when he helped the naked, wounded victim up from the ground.
Herd testified that the spots were "medium velocity blood spatters ... normally found from beating cases ..." consistent with a beating using the butt of a pistol.
No effort was made to explain why these bloodstains could not have been caused by dripping blood from the victim's wounds. Herd's explanation is certainly not unreasonable, but the reasons given in analyzing the stains hardly narrowed the possible explanation for the stains, except to eliminate rubbing.
Herd probably did not give sufficient testimony in establishing himself as an expert in this discrete system of criminal investigation. Nevertheless, the trial judge accepted his expertise, and the record before us does not demonstrate that he was wrong.
Assignment of Error No. 21
The defendant contends that the lower court erred in imposing an excessive sentence. The defendant was found guilty of aggravated rape, and was sentenced to the mandatory life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. He was found guilty of attempted first degree murder, and sentenced to fifty years at hard labor, the maximum sentence permitted for this crime. The sentences are to be served consecutively.
The trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentences imposed will not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Molinario, 400 So.2d 596, 600 (La.1981). While it is true that as a general rule sentences served for crimes arising out of a single course of conduct are served concurrently instead of consecutively,[12] this court has never held that consecutive sentences are necessarily excessive. Other factors must be considered. State v. Ortego, 382 So.2d 921, 923 (La. 1980).
The trial court is given general sentencing guidelines in C.Cr.P. 894.1. That article requires the court to state for the record the considerations and basis for the sentence. In giving his reasons for sentencing, the trial judge read from the defendant's criminal record noting nine convictions over twenty years. He noted the especially vicious nature of this offense.
Due to his repeated criminality over an extended period of time, and due to the violent nature of the crime for which he is being sentenced, the trial court did not abuse his discretion in making the sentence for attempted first degree murder consecutive with the sentence for aggravated rape. State v. Carter, 412 So.2d 540, 546 (La. 1982).
Assignment of Error No. 22
The defendant contends that a rational trier of fact could not have found the defendant guilty beyond a reasonable doubt. He argues that the victim could not accurately remember the events of the evening *1183 as evidenced by her questionable identification of the defendant.
The defendant was not convicted on the testimony of the victim alone. There was substantial testimony supporting her recollection of the events of that night. The defendant admitted being at or near the scene of the crime both before and after, and does not offer an explanation of his whereabouts during the commission of the crime credible enough to convince the jury of his innocence.
Viewing the evidence[13] in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty as charged. The standard for finding guilt beyond a reasonable doubt, announced *1184 by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) has been met. See State v. Lynch, 436 So.2d 567 (La.1983).
The conviction and sentences are affirmed.
DENNIS, J., concurs, disagreeing only with the treatment of the juror exclusion issue.
LEMMON, J., concurs, but disagrees that McCall's prior inconsistent testimony, which was given under oath and was subject to cross-examination, cannot be used as substantive evidence of defendant's guilt. See Federal Rules of Evidence 801(d)(1).
NOTES
[1] Assignments of Error Nos. 3, 4, 5, 6, 7, 8 and 13 were not argued or briefed. Assignments of error neither briefed nor argued are deemed abandoned. State v. Williams, 362 So.2d 530 (La.1978); State v. Burge, 359 So.2d 616 (La. 1978).
[2] "C. In noncapital cases, the jury shall be sequestered after the court's charge and may be sequestered at any time upon order of the court." C.Cr.P. 791(C).
[3] "A defendant cannot complain of a ruling refusing to sustain a challenge for cause made by him, unless his peremptory challenges shall have been exhausted before the completion of the panel.

The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law." C.Cr.P. 800.
[4] "The state or the defendant may challenge a juror for cause on the ground that:

. . . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict." C.Cr.P. 797(2), (3).
[5] "When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same." R.S. 15:492.
[6] "A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused." C.Cr.P. 921.
[7] "No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements." R.S. 15:487.
[8] "Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible." R.S. 15:493.
[9] "Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein." R.S. 15:495.
[10] "The prosecution has the right to rebut the evidence adduced by the defendant, but the defendant is without right to rebut the prosecution's rebuttal." R.S. 15:282.
[11] "On questions involving a knowledge obtained only by means of a special training or experience the opinions of persons having such special knowledge are admissible as expert testimony." R.S. 15:464.

"Every expert witness must state the facts upon which his opinion is based." R.S. 15:465.
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court." R.S. 15:466.
[12] "If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently." C.Cr.P. 883.
[13] The testimony of the witnesses (except that of McCall) is summarized:

The Victim
McCall was shot as he and the victim struggled. The victim heard McCall cry out, "Bobby Ray, she shot me." The struggle continued with these two rolling downhill into a ditch behind the apartments. Another person grabbed the gun from the victim and shot her. After the beating and rape, he helped her to dress, looked for her car keys, then held a gun to her head, threatening to kill her.
An older man came around the corner of the building and asked what was going on. The defendant stuck the gun in the waistband of his pants and pulled his shirt over it. The defendant then helped her to the front of the building. A younger man soon drove up and talked with the defendant. The policemen soon arrived. The victim described her assailant as shorter than she was in heels. She is 5' 6" and was wearing 2 to 2½" heels. She remembered that he was wearing a black cap with zipper-like designs on the side, and remembered his eyes. He was a black man and his hair "froed" out from under the cap. His shoulders were wide and his shirt had a crazy design; it was not a solid color. She recalled no facial hair or scars or tatoos.
At trial the victim recognized the cap in the state's exhibit of defendant's clothing. She did not recognize the shirt or the pants, but stated that the shirt had a crazy design. She had recognized the defendant's voice at the live lineup, but was not absolutely sure of her in-court identification.
The victim had earlier described her assailant as having freckles or light patches in his face.
Robert Glover
Heard voices outside his window, saw a man with a green silkish shirt, corduroys and a cap, and a woman arguing in the bushes, asked what was wrong. Asked if he should call an ambulance and the police and was told to call the ambulance. He came downstairs to use the phone, and by the time he got there, the man and woman were coming around the building to the front. He went back upstairs to his apartment when there was no one home at the house with the phone.
Said the defendant's shirt was tied up and, from his second floor porch, he saw a gun in the waistband. He saw nothing in the man's hand during the arguing. His pretrial description was: 5' 9", 150 pounds, gun in back of pants, no facial hair, cap with snaps. He had heard two gunshots about one-half hour before he heard the shouting. The victim testified that four shots were fired. Glover saw defendant leave about the time the ambulance and police arrived.
Kenny Saxton
Arrived at his apartment building around 3:00 a.m. to find the defendant sitting with the victim on a porch. The defendant asked for help. Says defendant had on jeans, a long shirt he wore out, and a cap. He went with the defendant to see about McCall, and got water for McCall. He then went with the defendant to call the police.
Officers King and Foster
Police report says that the defendant told police he was wearing the same clothes when arrested that he wore the night of the crime. Defendant says shirt and underwear were different.
Wojtkiewicz
Did a characterization of body fluids and determined that the defendant is a member of the 35 to 40% of the population that is not excluded as a suspect because of blood types. There was no vaginal fluid found on the defendant's clothes. The blood found on his clothing was determined to be human blood.
Rebuttal testimony of Herd
The blood on the defendant's shirt was splattered there when an object hit some fresh blood. It did not drop there, nor was it smeared there by direct contact between the shirt and a bloody spot. The spatters are consistent with the gun beating the victim described.
Defendant
He was searching for McCall and heard him moaning, saw the woman lying on the ground undressed. He helped the woman to dress and to get around to the front of the building. He then tried to help McCall, but could not lift him. Gave his name to Kenny Saxton after they went to call the police. He then went to tell McCall's family that McCall had been shot.
Defendant is 5' 4", has skin grafts on his thighs, scars on his face and neck, and facial hair. Describes shirt he was wearing the night of the crime the same way victim described the shirt at the first trial when victim said the shirt presented by the district attorney is not the shirt the assailant was wearing.