485 So.2d 156 (1986)
STATE of Louisiana, Appellee,
v.
Kenneth Ray ROBINSON, Appellant.
No. 17590-KA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1986.
Writ Denied May 30, 1986.
Daryl Blue, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., James Allen Norris, Dist. Atty., Michael J. Fontenot, Asst. Dist. Atty., Monroe, for appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
Defendant, Kenneth Ray Robinson, was tried by jury, found guilty of aggravated burglary and sentenced to 15 years at hard *157 labor. From his conviction and sentence he appeals, asserting seven assignments of error. For reasons stated herein, we affirm.
On October 7, 1984 at approximately 3:35 a.m., the Ouachita Sheriff's Department received a call that a burglary was in progress. Three deputies responded and proceeded to Lydia Street in West Monroe, Louisiana. Upon arriving at the scene they found the victim, Linda Jackson, standing outside her home. An investigation revealed that an intruder had broken into her home via the kitchen window. Ms. Jackson testified that she had been asleep and was awakened by a voice calling out her name. She felt a hand around her neck and a sharp object pressing against her throat. She immediately began crying and tried to move when the assailant told her that if she screamed or said anything he would cut her throat. Sitting up, Ms. Jackson managed to turn on a light beside her bed. Surprised, her assailant initially attempted to cover his face with his hands. However, he eventually dropped his hands and Ms. Jackson testified she was only a foot away from him and got a good look at his face. Then, an unknown person began blowing a car horn outside the house and her assailant went over to look out the window. Seizing the opportunity, Ms. Jackson ran from her bedroom and out the front door of her house. Turning back to check on her two children, she saw her assailant fleeing through the house back towards the kitchen. Ms. Jackson then ran to her aunt's house across the street and phoned the police. Ms. Jackson further testified that when she turned on the light she immediately thought of her assailant's name. When the police first arrived she gave the sheriff's deputies the name Kenny Ray. The deputies then proceeded to Kenny Ray's house. Upon asking for the defendant, they were informed by an occupant of the house, Bill Singleton, that Kenny Ray did not live there. According to Bill, the deputies did not ask for Kenny Ray, but rather asked for a Kenny DeWayne. Once the police returned to the victim's house she informed them of her assailant's full name, Kenneth Ray Robinson.
The defendant was eventually brought back to the victim's house by the victim's boyfriend and brother. As soon as the defendant was brought into the house, Ms. Jackson yelled "that's him, that's him." At trial, Ms. Jackson again positively identified the defendant as her assailant. Based on these facts, a jury found the defendant guilty of aggravated burglary and the trial judge sentenced the defendant to 15 years at hard labor.

DISCUSSIONASSIGNMENT NO. 1
In his first assignment, defendant contends the trial court erred in overruling his objection to the state's inquiry into the details of one of his prior guilty pleas. During the course of the trial the defendant took the stand and admitted on direct examination that he had pled guilty to several prior offenses. On cross examination the prosecutor elicited the following testimony:
Q. Now, on three counts of simple crime against nature, didn't you also take a plea bargain on that?
A. I took a plea bargain ...
Q. You took a plea bargain on that, three counts of simple crime against nature?
A. Yes, I did.
Q. Now, what were you charged with? [OBJECTION INTERPOSED AND OVERRULED.]
Q. Now, what were you charged with when you pled guilty to three counts of simple crime against nature?
A. I was charged ... I had got framed, I was ... during that time, I was... I was doing time during that time and I got ... in that matter of that charge I got ... I was getting...
Q. What were you charged with? Let me ask you this, weren't you charged with aggravated rape?
A. Yes, I was.

*158 Q. And as a plea bargain, you took the plea to three counts of crime against nature?
A. Yes I did.
LSA-R.S. 15:495 provides:
§ 495. Impeachment by evidence of conviction; condition precedent to proof by others; prohibition against cross-examination as to indictment or arrest
Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source that the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
[Emphasis added.]
In State v. Jackson, 307 So.2d 604 (La. 1975), the Louisiana Supreme Court construed the language of § 495 to permit cross-examination of a witness on the details of prior convictions for the "purpose of establishing the true nature of the offense." State v. Jackson, supra at 608. The Jackson rule has been expanded to include defendants who take the stand in their own behalf. State v. Chaney, 423 So.2d 1092 (La.1982); State v. Smith, 419 So.2d 468 (La.1982); State v. Talbert, 416 So.2d 97 (La.1982); State v. Talbot, 408 So.2d 861 (La.1980) (on rehearing new trial ordered on other grounds).
Defendant urges us to overrule Jackson. While we note subsequent decisions have severely criticized Jackson for overbreadth, it is still the law and we are bound by it. Later cases, however, have sufficiently circumscribed the broad rule of Jackson to prevent prejudice to a defendant. State v. Talbot, supra; State v. Connor, 403 So.2d 678 (La.1981); State v. Neslo, 433 So.2d 73 (La.1983).
State v. Connor, supra, is closely analogous to the instant case. There, the defendant was asked on direct examination if he had ever pled guilty to any crimes. He admitted two prior guilty pleas, one to manslaughter and the other to aggravated battery. On cross-examination, the prosecutor attempted to show that the guilty pleas were the results of "plea-bargains" in an effort to counter defendant's ploy of showing that he (defendant) was a "good, honest Samaritan, that when he commits a crime he comes in and says he is guilty." Finding the prosecutor's questions about the details of the "plea bargain" to be improper, the supreme court stated:

Jackson, supra, should be limited to questioning relative to prior convictions. It does not create a standard for questioning a witness about prior arrests or charges. Only limited questioning as to the facts of prior conviction is permissible. Minor details of ... charges dropped in response to a guilty plea may not be used to cast doubt on a defendant's credibility.

403 So.2d at 680 (emphasis added)
The Connor limitation was recently reaffirmed by the supreme court in State v. Williams, 445 So.2d 1171 (La.1984).[1]
Here, the prosecutor specifically asked about charges that had been dismissed or dropped in response to defendant's *159 plea to three counts of simple crime against nature. The prosecutor did not attempt to elicit any facts surrounding the prior convictions. The prosecutor's questions and subsequent reference to dropped charges in closing argument are clearly contrary to the limitations placed upon Jackson by Connor and Williams. The defense objection should have been sustained.
However, as noted in State v. Connor, supra, and State v. Tobias, 441 So.2d 400 (La.App. 4th Cir.1983), aff'd 452 So.2d 157 (La.1984), this error does not necessarily mandate a reversal. If defendant's guilt is otherwise overwhelming or other evidence provides an "ample basis" for the conviction, the error can be treated as harmless. Here, the victim had "no doubt" that the defendant was her assailant. Shortly after the crime, she gave sheriff's deputies an initial description that matched the defendant and the type of clothing he admittedly was wearing. Then she identified the defendant shortly after the incident when he was brought back to the scene of the crime. This, with her later in-court identification, was certain. They provide a very ample basis for conviction. Furthermore, we cannot find the prosecutor's improper questions and remarks in closing argument had any significant bearing on the outcome of this case. Defendant had already admitted his guilt to simple battery, simple assault, resisting an officer, receiving stolen property, three counts of simple crime against nature and possession of marijuana. Thus, his credibility had already been significantly impeached. Considering the overwhelming evidence of guilt, the mere reference to a dropped charge, while improper, could not have significantly contributed to the jury's finding of guilt. The improper questioning and reference does not constitute grounds for reversal. State v. Connor, supra; LSA-C.Cr.P. art. 921.

ASSIGNMENTS NOS. 2 & 3
In the second assignment of error, defendant contends the trial court erred in denying his motion for a post verdict judgment of acquittal or alternatively a new trial. In his third assignment, defendant contends that no rational trier of fact could have found him guilty beyond a reasonable doubt. Since these assignments both question the sufficiency of evidence, we will address them together.
In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the standard of review for the sufficiency of evidence to convict was stated as "whether viewing the evidence in the light most favorable to the prosecution any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt."
Admittedly, the only direct evidence in this case connecting the defendant with the crime is the victim's identification. However, contrary to the defendant's contentions, we find the victim's identification to be very reliable. Ms. Jackson testified that when she turned on the light she was only a foot away from her assailant's face and that she got a good look at him. She associated the defendant with his first and middle name and gave that name to the police shortly after the incident. Ms. Jackson also testified that she knew the defendant because he lived in her neighborhood and went to school with her brother. Furthermore, when the defendant was brought back to her house she immediately yelled, "that's him, that's him." The fact that Ms. Jackson could not remember exact times is understandable under the circumstances and does not weaken her otherwise flawless identification of the defendant.
Defendant further contends that the testimony of his witnesses, Will Ballard, James Malone and James Manning, raises serious doubts as to his guilt. James Malone testified that he saw the defendant in his cafe around 2:30 or 3:00 a.m. on the night in question. However, this was only an estimated time. Mr. Malone stated that he was not exactly sure of what time he saw the defendant. Will Ballard testified he saw the defendant at Malone's Cafe when he left around 3:00 a.m. James Manning, an older man with whom the defendant *160 lived, indicated that the defendant came home that night at 3:30 a.m. The defendant himself testified he left Malone's Cafe at about 3:20 a.m., went straight home and was in the house by 3:30 a.m. On the other hand, Miss Jackson testified that the burglary occurred at approximately 3:00 a.m., but that she waited some fifteen to twenty minutes to call the police after fleeing her home. Accepting all this testimony as true, it still coincides with Deputy Whitaker's testimony that he received the burglary call at 3:35 a.m. The jury could have easily interpreted the alibi testimony to place defendant leaving Malone's Cafe around 3:00 a.m. and stopping by the victim's house, which was nearby and on the way home. There he could have perpetrated the burglary and still reached home by 3:30 a.m. The fact that the victim waited fifteen or twenty minutes before calling the police would explain the five-minute lag between the time the defendant got home and Deputy Whitaker got the call. Thus the jury could have concluded beyond a reasonable doubt that Robinson was indeed in the area at the exact time of the offense.
Viewing this evidence in the light most favorable to the prosecution we find the jury could have rationally concluded that the state had proved the defendant's guilt beyond a reasonable doubt. The jury, as the trier of fact, viewed the evidence, heard the testimony, observed the demeanor of all the witnesses and evidently did not believe defendant's denial of the incident. Considering the victim's exceptionally reliable identification, the corroborating testimony of Sheriff's deputies, and even the corroborating testimony of defendant's witnesses, we find the record provides sufficient evidence of defendant's guilt.

ASSIGNMENTS NOS. 4 & 5
In these assignments, defendant contends that a sentence of 15 years at hard labor is harsh and excessive in view of article 894.1 and applicable provisions of the Louisiana and United States Constitutions.
A sentence is unconstitutionally excessive in violation of Article I, § 20 of the Louisiana Constitution where it is grossly out of proportion to the severity of the crime or it is nothing more than a purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). Although a sentence is within statutory limits it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). However, the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App.2d Cir.1983). In determining whether a sentence is constitutionally excessive, the sentencing guidelines of LSA-C.Cr.P. art. 894.1 provide the relevant criteria. State v. Tully, 430 So.2d 124 (La. App.2d Cir.1983), writ denied 435 So.2d 438 (La.1983); State v. Sepulvado, supra.
In the instant case, the record reveals that the trial judge adequately complied with article 894.1 in imposing a 15 year sentence on this defendant. The trial judge reviewed the pre-sentence investigation and noted that the defendant had three prior felony convictions. Due to these prior felony convictions the judge concluded the defendant was not eligible for probation, parole or a suspended sentence. Additionally, the trial judge expressly found that a number of the aggravating factors enumerated in 893.1 applied to this defendant. Most notably, the trial judge found that the defendant's criminal conduct threatened serious bodily harm and that the defendant was aware of this fact. The trial judge further found that the defendant's criminal conduct was as a result of circumstances likely to recur, that the defendant was in need of correctional treatment and that a lesser sentence would deprecate the seriousness of the offense.
*161 Considering the serious nature of this offense and defendant's obvious proclivity to crime we do not find the sentence imposed to be excessive. In so holding, we note that the defendant only received 15 years, which is only one-half of the maximum sentence possible for conviction of aggravated burglary under LSA-R.S. 14:60.

ASSIGNMENT NO. 6
In his final assignment of error defendant contends prejudicial error occurred when the prosecutor referred to him as a criminal in the closing argument. Our courts have repeatedly held that failure to raise a contemporaneous objection amounts to a waiver of any error. State v. Kahey, 436 So.2d 475 (La.1983). An objection to alleged prejudicial remarks or the conduct of the prosecutor must be contemporaneous. State v. Anderson, 333 So.2d 919 (La.1976); LSA-C.Cr.P. art. 770, C.Cr.P. art. 841. Our review of the record fails to reveal that defendant specifically objected to the complained of reference. Defense counsel did subsequently object to the prosecutor's rhetorical question to the jury, "how many of you have three felonies?" However, this objection was made at a later time and on a totally different ground. It cannot serve as a substitute for a contemporaneous objection to the complained of remark. LSA-C.Cr.P. art. 841.
Further, we do not consider the state argument improper. The evidence shows that defendant was a criminal and had previously been convicted of committing more than one felony crime. His criminal record bears upon his credibility and character. The state could argue this evidence. LSA-C.Cr.P. art. 774.
Moreover, a reversal because of improper closing argument is not required unless the reviewing court is thoroughly convinced such remarks influenced the jury and contributed to the verdict. State v. Sharp, 418 So.2d 1344 (La.1982); State v. Savoie, 448 So.2d 129 (La.App. 1st Cir. 1984), writ denied 449 So.2d 1345 (La.1984). In the instant case we conclude that the complained of remark, even if improper, did not influence the jury nor contribute to the guilty verdict. This assignment does not present reversible error.
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] We note the Supreme Court in State v. Sykes, 364 So.2d 1293 (La.1978), appears to sanction questions about prior charges on the basis that these questions only put the "true nature of the offense before the jury." However, it should be noted that in Sykes, the defendant had moved for a mistrial solely on the basis of the prosecutor's question. The defendant had objected to the prosecutor's question before the defendant answered and the question was sustained. Thus, the defendant never answered the question and the jury was admonished to disregard the question. Therefore, the Sykes court never truly reached the issue of whether eliciting testimony about prior charges is improper and any language to this effect is purely dicta. Moreover, the Louisiana Supreme Court cases cited above are more recent and specifically prohibit questions concerning charges dropped in response to a guilty plea.