1 tBARRY, Judge. '
The defendant was charged with armed robbery and attempted second degree murder. He was found not guilty of armed robbery and the jury deadlocked on the attempted second degree murder charge. The defendant was retried and found guilty of aggravated battery, La.R.S. 14:34 and sentenced as a multiple offender to 10 years at hard labor. The defendant argues that the trial court erred by allowing a witness’ statement to be read to the jury which was only relevant for impeachment.

TESTIMONY

Sybil Franklin testified that on March 6, 1994 about 9:30 p.m. she was sitting on a friend’s porch when Quincy Brown (evidently not related to the defendant) called to her and she went to talk to him. Quincy wanted Franklin to walk around the corner to the house of a lady who wanted to buy $100 of drugs; he offered to pay her $20 or a rock of crack cocaine. Quincy told Franklin that he would walk to the next corner and signal her by throwing his hands in the air when she was to walk down the street. He gave her the signal, but when she ^walked to the corner, Quincy disappeared. Quincy gave her the signal a second time. When she walked to the next corner Quincy was gone. She was on her way back when she saw the defendant whom she knew as “Lowdown.” They talked and she warned the defendant that the police were around. Franklin admitted that she was high on crack cocaine and marijuana at the time of the shooting.
Franklin stated that the defendant walked off, then called Franklin’s name. When she turned around, he shot her three times in the face, in the arm and in the back, then threatened to kill her baby. Three men helped her walk home. She identified the defendant in court.[1] Franklin explained that the defendant shot her because she had witnessed the defendant commit armed robbery of a female cab driver. Franklin stated that she testified against the defendant at the armed robbery trial, but he was found not guilty.
Officer Micheu testified that he responded to a reported shooting. He found the victim, Sybil Franklin, lying on her back and bleed *430 ing profusely from the face and arm. The officer found Franklin in front of her residence, which was a few blocks from the shooting scene. She initially identified “Lowdown” as the perpetrator. The officer’s investigation led to the defendant and Quincy Brown. The officer stated that the evidence showed that the defendant shot Franklin because she witnessed an armed robbery which the defendant committed.
Dr. Otten, an oral maxillofacial surgery resident at LSU Medical Center, ^testified that Franklin had three gunshot wounds to the face and lost a great deal of blood before she arrived at the emergency room. Two teeth were damaged beyond repair, her tongue was lacerated, and her jaw was broken.
Fifteen year-old Quincy Brown testified that he was also charged with the attempted second degree murder of Franklin. He stated “Lowdown” was the defendant’s nickname. Quincy asked Franklin to walk around the corner to sell drugs for him, then went back around the corner by himself. At that time he heard shots. Quincy answered “No” when questioned whether he asked Franklin to go around the corner for the defendant to shoot her. Quincy said he spoke to the defendant after school, not that night.
The State produced Quincy Brown’s statement and he admitted making a statement to the police, but denied signing the statement. Quincy began reading the statement, the defense objected, and the court overruled the objection “finding that it goes to the weight of the evidence.” Quincy continued to read the statement and again stated that the signature was not his. The defense objected and the court stated: “I would sustain that. The gentleman denies that it’s his statement. It can’t be introduced for its truthfulness .... ”
The State questioned Quincy about his testimony in juvenile court, the defense objected, and the court ruled the testimony was confidential. The court noted that its availability for impeachment purposes was another matter. The State objected and the court stated: “It can’t be offered for its truthfulness to begin with, regardless of whether it was taken in any court, including Juvenile Court.” The court did not permit the State to read the transcript. Quincy denied that he had testified that he lured Franklin around the corner for the defendant to shoot her because the defendant threatened to kill him.
14Pet. Thompson testified that after Franklin identified Quincy in a photo lineup, he arrested Quincy who gave a statement. The detective identified the statement which he signed with Quincy and Quincy’s uncle. Pri- or to Det. Thompson reading the statement, the court stated that the detective could read the statement “with the understanding that it’s not offered for its truthfulness.” The court declared: “The Jury is not to presume it’s true because the Officer reads it....” After counsel objected, the court said that “the issue here is possible impeachment of a witness, the answers given to any questions asked in this alleged statement are not to be viewed as true.”
Det. Thompson read the statement in which Quincy said that on the night of the shooting Lowdown told him that Franklin was “ratting him out for a cab driver robbery .... ” and asked him where Franklin was. Quincy said where he had seen Franklin. Lowdown asked him to go around the corner, find Franklin, and tell her that Lowdown wanted to talk to her. When Franklin asked where Lowdown was, Quincy said that he was around the corner by a side street. Quincy walked Franklin to the corner and went back alone, then heard shots. He ran around the corner and saw Franklin with a bloody face. She said the defendant shot her. When asked whether the defendant (Lowdown) threatened him to assist in the shooting, Quincy said the defendant had talked in a harsh voice.

READING THE STATEMENT

The defendant submits that the trial court erred by allowing the detective to read Quincy Brown’s entire prior statement into the record when the statement was only relevant for impeachment.
La.C.E. art. 607D(2) provides:
*431-433 Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness’ ^testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
The prior statement is admissible after the proponent has fairly directed the witness’ attention to the. statement and the witness has been given the opportunity to admit the fact or statement and has failed to do so. La.C.E. art. 618. Such a statement may be considered for impeachment purposes only and not as substantive evidence of the defendant’s guilt. State v. Jones, 94-0926 (La.App. 4 Cir. 12/28/94), 648 So.2d 472, writ denied, 95-0272 (La. 6/16/95), 655 So.2d 346. See also State v. Williams, 445 So.2d 1171 (La.1984) (pre-C.E.) and State v. Camp, 571 So.2d 195 (La.App. 4th Cir.1990) (pre-C.E.).
Quincy Brown denied that he had stated he lured Franklin around the corner at the defendant’s request. Quincy’s prior inconsistent statements made to Det. Thompson were admissible to impeach his testimony that he asked Franklin to go around the corner to sell drugs and changed his mind. In his prior statement Quincy said that he lured Franklin around the corner to meet the defendant. The trial court cautioned the jury several times that the statement was read solely for impeachment and not for truthfulness. In brief the defendant concedes that defense counsel failed to request a specific instruction. See La.C.E. art. 105.
Although reading the entire statement may have been in error, this Court must consider whether the error contributed to the verdict or whether the evidence was so overwhelming that the verdict would have been the same in the absence of the error. State v. Corley, 93-1934 (La. 3/11/94), 633 So.2d 151, cert. denied, — U.S. -, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994). We conclude that the error was harmless because | eFranklin’s testimony was unequivocable that the defendant shot her five times, three times in the face. This assignment lacks merit.
A review of the record for errors patent reveals none.
The defendant’s conviction and sentence are affirmed.

AFFIRMED.

. The defense showed that Franklin chose another subject in a photographic lineup. She explained that the choice was due to confusion and not her inability to pick out the defendant whom she identified at trial. On direct examination Franklin admitted that she had picked out both Quincy Brown and the defendant in photo lineups, but she stated that only the defendant shot her. Officer Thompson testified that he showed Franklin two photo lineups at the hospital. She picked Quincy in one lineup and the defendant in another lineup at the hospital. However, he testified that Franklin told him that the defendant shot her and Quincy had only taken her around the corner.