966 So.2d 773 (2007)
STATE of Louisiana, Appellee,
v.
Tarome HARRIS, Appellant.
No. 42,376-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 2007.
*777 Louisiana Appellate Project by Mark O. Foster, for Appellant.
Tarome Harris, Pro Se.
J. Schuyler Marvin, District Attorney, C. Sherburne Sentell, III, John M. Lawrence, Assistant District Attorneys, for Appellee.
Before WILLIAMS, MOORE and LOLLEY, JJ.
WILLIAMS, J.
The defendant, Tarome Harris, was charged by bill of information with aggravated escape, in violation of LSA-R.S. 14:110(C)(1), and two counts of aggravated battery, in violation of LSA-R.S. 14:34. Following a jury trial, the defendant was found guilty as charged of aggravated escape. With regard to the charges of aggravated battery, the jury found the defendant guilty of the responsive verdict of second degree battery. The defendant was sentenced to serve 10 years in prison on the aggravated escape conviction and five years in prison on each of the second degree battery convictions. The latter were ordered to run concurrently with each other, but consecutively with the former. For the reasons that follow, we affirm the defendant's convictions and sentences.

FACTS
On October 15, 2005, the defendant and three other inmates escaped from the Webster Parish Jail. According to the testimony, Deputies Shelton Layfield and James Thompson were in the process of "locking down" the inmates for the night. As the deputies ordered a group of inmates in the jail's common room to go to their cells, one of the inmates, Christopher Whitehead, started a scuffle with Deputy Layfield. The defendant and two other inmates joined Whitehead in an attempt to push past the deputy and escape. Deputy Thompson came to the aid of Deputy Layfield, and in the scuffle, the defendant reached for Deputy Layfield's metal baton.[1] The defendant missed the baton, grabbing the flashlight instead. The defendant threw the flashlight to the floor and managed to grab the deputy's pepper spray. The defendant sprayed each of the deputies in the face with the pepper spray. As Deputy Layfield lay on the floor incapacitated from the spray, a struggle ensued between the defendant and Deputy Thompson. Deputy Thompson hit the defendant, and the defendant sprayed him and kicked him multiple times. The defendant made it past Deputy Thompson, and eventually, the four inmates broke the key mechanism in a sliding door and escaped down the back stairs of the jail. Deputy Thompson called "911" for assistance, and the two deputies were taken to Minden Medical Center for treatment for exposure to the pepper spray, as well as bruises and contusions.
Three of the inmates were apprehended within hours of the escape. However, the defendant was not apprehended until approximately seven months later. The defendant was charged by bill of information with aggravated escape, the aggravated *778 battery of Deputy Layfield and the aggravated battery of Deputy Thompson. Following a jury trial, the defendant was convicted of aggravated escape and the responsive verdict of second degree battery with regard to the aggravated battery charges. The defendant was sentenced to serve 10 years in prison on the aggravated escape conviction and five years in prison on each of the two second degree battery convictions. The latter were ordered to run concurrently with each other, but consecutively with the former.
The trial court denied the defendant's motion for post-verdict judgment of acquittal and motion to reconsider sentence. The defendant now appeals.

DISCUSSION
Sufficiency of the Evidence
The defendant contends the evidence was insufficient to support his convictions for second degree battery of the deputies because no one was seriously injured. Although the defendant admits that he sprayed both of the deputies with the pepper spray, he asserts that the spray, "by its very design and purpose," does not cause serious injury. The defendant contends there was no unconsciousness, extreme physical pain, protracted and obvious disfigurement, protracted loss or impairment of the function of a bodily member, or substantial risk of death.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Second Degree Battery
Battery is the intentional use of force or violence upon the person of another or the intentional administration of a poison or other noxious liquid or substance to another. LSA-R.S. 14:33. LSA-R.S. 14:34.1 provides, in pertinent part:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
* * *
After reviewing the record in the instant case, we find that the evidence was *779 sufficient to support the defendant's convictions for second degree battery. The great majority of batteries can produce some physical pain, so the adjective "extreme" serves to distinguish lesser degrees of pain that would not support a conviction for the more serious crime of second degree battery. Although the term "extreme physical pain" is not defined by statute, in State v. Thompson, 399 So.2d 1161 (La.1981), the Supreme Court stated that the term describes a condition which most people of common intelligence can understand.
In our view, a commonsense understanding of the term would include the pain inflicted by the pepper spray used in this case. It was not necessary for the spray to produce permanent injuries, but simply to produce "extreme physical pain," and that degree of pain was evident by the testimony of the deputies. Deputy Layfield admitted that he basically panicked after being sprayed "when I couldn't see and I was hurting and burning real bad, that was it." Deputy Layfield testified that he was taken by ambulance to the hospital where "it took them awhile to flush my eyes out." He further stated that he had "real bad headaches from the spray" and his foot was "bruised up pretty bad." Deputy Thompson also testified that he was taken to the Minden Medical Center for treatment from the pepper spray and that his left leg was x-rayed because his knee was swollen. Plainly, the spray is intended to produce such intense physical pain that it basically incapacitates a human being. Furthermore, it is for the legislature, not the courts, to determine whether or not "extreme physical pain" should be of the same stature as protracted and obvious disfigurement, etc., for purposes of defining second degree battery.
Additionally, aggravated battery, under LSA-R.S. 14:34, is a battery committed with a dangerous weapon, and under the provisions of LSA-C.Cr.P. art. 814, second degree battery is a responsive verdict to aggravated battery. In State v. Johnson, 31,390 (La.App.2d Cir.3/31/99), 730 So.2d 1035, where a deputy who was sprayed with mace was blinded and lost consciousness, we concluded that the use of mace could be considered the use of a dangerous weapon as that term is defined under LSA-R.S. 14:2.[2] Additionally, in State v. Rembert, 312 So.2d 282 (La.1975), the defendant was charged with aggravated battery. The trial court quashed the bill of information, finding that "the aerosol container of mace spray used in the battery was not a `dangerous weapon' within the meaning of the statute defining the crime charged." Id. at 283. The Supreme Court reversed the ruling, finding that the trial court erred "in sustaining the motion to quash on the basis of the factual evidence tending to prove that, as used in this instance, the mace was not a dangerous weapon." Id. at 284.
We also reject the defendant's "policy" argument. According to the defendant, if his convictions are affirmed based on spraying a person with a "mace-type" spray, the effects would be drastic because every time a law enforcement officer sprays a citizen with mace, the officer would have to consider the risks of facing a felony charge if the justification for using the spray proves to be wrong. The defendant's argument is unreasonable because a large number of law enforcement officers carry firearms, which are certainly "dangerous weapons" that could support a conviction *780 for the even more severe crime of aggravated battery. However, that concern has not prevented officers from carrying out their duties, including the use of firearms when necessary. Therefore, we are not concerned that affirming the defendant's convictions will have a drastic effect on law enforcement officers who carry mace-type spray.
Aggravated Escape
The defendant next contends the evidence was insufficient to support his conviction for aggravated escape. The defendant does not dispute his guilt of escape. Rather, he contends the escape was not aggravated, as no dangerous weapons were used and no one was harmed during the escape.
LSA-R.S. 14:110(C)(1) provides:
Aggravated escape is the intentional departure of a person from the legal custody of any officer of the Department of Public Safety and Corrections or any law enforcement officer or from any place where such person is legally confined when his departure is under circumstances wherein human life is endangered.
To prove that human life is endangered, the state need not prove that the offender was armed. State v. Rice, 31,871 (La. App.2d Cir.3/31/99), 736 So.2d 956, writ denied, 99-1314 (La.10/15/99), 748 So.2d 464; State v. McManus, 94-0974 (La.App. 1st Cir.6/23/95), 658 So.2d 811; State v. Desselle, 614 So.2d 276 (La.App. 3d Cir. 1993). Under the clear wording of the statute, if the circumstances indicate beyond a reasonable doubt that human life was endangered, then that particular element of aggravated escape is proven sufficiently. State v. Desselle, supra.
In State v. Rice, supra, the defendant slammed a 70-year old jailer into a wall or door and sprayed him with mace. The jailer received a gash to his head, was temporarily blinded by the mace and passed out. This court affirmed his conviction for aggravated escape, finding that a rational jury could have found that human life was endangered.
In the instant case, we first point out that the defendant was armed with, and in fact used, a weapon which was dangerous in the manner in which it was used, i.e., pepper spray. The only disputed element for aggravated escape, the endangerment of human life, was established by the testimony of Deputy Layfield and Deputy Thompson. Deputy Layfield testified that the defendant sprayed the pepper spray in his eyes and that he was unable to see. He stated, "I was burning, I was hurting, I was out of it." When asked if he felt that his life was in danger, Deputy Layfield responded in the affirmative, stating:
Because I could not see to defend myself. When I got sprayed I had never been hit with nothing like that outside the military, and that scared the daylights out of me. The  I could not control what was going on. I did not know what he could grab or any of them.
Deputy Thompson testified that he was sprayed and kicked multiple times during his struggle with the defendant. He stated that during the fight, he was "blinded with pepper spray" and was swinging blindly, seeing a blur. When asked if he felt that his life was in danger, Deputy Thompson replied:
Definitely I did. I felt like that, you know, the gentleman was at the point in his life that he, you know, all he wanted out and if it meant taking a life that was just to be it. He'd take a life to get out. And I felt that if we had 58 people in there, inmates, that he could let loose if he had the keys to do so.
*781 Moreover, the escapees left the only two guards on duty, who were in charge of approximately 60 inmates, incapacitated, blinded after being sprayed with pepper spray.
Although the facts of this case arguably are not quite as severe as those in State v. Rice, supra, this escape involved both physical altercations and the use of a dangerous weapon. Furthermore, both deputies testified that they considered their lives to be in danger, and we particularly note the testimony of Deputy Thompson who stated that he felt the defendant "was at that point in his life that he, you know, all he wanted out and if it meant taking a life that was just to be it. He'd take a life to get out."
We also note that at the sentencing hearing, the trial court stated that the defendant is a fourth felony offender who, in 1997, had been sentenced to five years at hard labor concerning possession of marijuana, second offense, and distribution of cocaine; in 1991 he had pled guilty to distribution of cocaine and had received a six-year hard labor sentence; and in December of 1990, he had pled guilty to attempted distribution of cocaine and had been sentenced to six years at hard labor. Furthermore, at the time of sentencing, the defendant had other drug charges pending and the state intended to bill him as a habitual offender, which in all likelihood, would result in him serving a life sentence. Thus, the record indicates that it was reasonable for the jury to believe that the defendant, who was thought to be the "leader" of the escapees, would have done whatever was necessary in order to accomplish the escape.
Viewing the evidence in the light most favorable to the prosecution, based on the testimony of the deputies, a rational jury could have found that human life was endangered during the escape. This court will not disturb the jury's apparent conclusion. See, State v. Mussall, 523 So.2d 1305 (La.1988); State v. Rice, supra; State v. Ford, 28,724 (La.App.2d Cir. 10/30/96), 682 So.2d 847, writ denied, 99-0210 (La.5/14/99), 745 So.2d 12. Thus, we find that the evidence was sufficient, under Jackson v. Virginia, supra, to convict the defendant of aggravated escape. This assignment lacks merit.
Sentence
The defendant also argues that the trial court erred in ordering his sentence for aggravated escape to run consecutive with his sentence for second degree battery. He maintains that there is no question that the convictions herein stem from the same act or transaction, and, therefore, the sentences should have been ordered to run concurrently.
LSA-C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.

(Emphasis added). Although Article 883 favors imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender's past criminality or other circumstances in his background or in the commission of the crimes justify treating him as a grave risk to the safety of the community. State v. Walker, XXXX-XXXX (La.10/12/01), 799 So.2d 461; State v. Williams, 445 So.2d 1171 (La.1984); State v. Carter, 412 So.2d 540 (La.1982).
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular *782 justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Boudreaux, 41,600 (La.App.2d Cir.12/13/06), 945 So.2d 898; State v. Mitchell, 37,916 (La.App.2d Cir.3/3/04), 869 So.2d 276, writ denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1168, cert. denied, 543 U.S. 1068, 125 S.Ct. 905, 160 L.Ed.2d 801 (2005). However, the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. State v. Boudreaux, supra; State v. Hampton, 38,017 (La.App.2d Cir.1/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.3/11/05), 896 So.2d 57, 2004-2380 (La.6/3/05), 903 So.2d 452.
Among the factors to be considered are the defendant's criminal history, State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Jacobs, 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2d Cir. 1986), writ denied, 496 So.2d 355 (La. 1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App. 4th Cir. 1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir. 1983), writ denied, 435 So.2d 433 (La. 1983); whether the defendant constitutes an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); the potential for the defendant's rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983); State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir.1987); and whether the defendant has received a benefit from a plea bargain, State v. Jett, supra; State v. Adams, supra.
In the instant case, as stated above, the trial court noted the defendant's long record of criminal activity, and the court's recitation of that history revealed multiple serious felony offenses. The court then stated that it had considered the defendant's criminal record, the offender class, and the serious nature of the current charges, and that lengthy sentences were recommended in the presentence investigation report. The court gave the defendant an opportunity to address the court before sentence was imposed. The defendant stated that, at the time of the escape, he was "frustrated" and he "wasn't in [his] right state of mind because [he] was going through a lot of things." After listening to the defendant, the court noted that defendant had been in trouble "for a very long time doing all kinds of things, and it's culminated in this aggravated escape and it's a thousand wonders that somebody didn't get killed. . . ." Under these circumstances, we find that the record is sufficient to support consecutive sentences for this defendant.
Pro Se Assignment of Error  Ineffective Assistance of Counsel
The defendant argues that his trial counsel was ineffective because she failed to interview, investigate or allow any of his co-defendants to testify with regard to whether he had discussed escaping with them prior to the offense. The defendant also contends he was denied effective assistance of counsel due to a conflict of interest between him and his attorney. According to the defendant, defense counsel was married to an assistant district attorney in Webster Parish, and the district attorney of Webster Parish had represented the defendant in two unrelated matters.
Generally, ineffective assistance of counsel claims are usually addressed in post-conviction proceedings, rather than on direct appeal. State v. *783 Leger, XXXX-XXXX (La.7/10/06), 936 So.2d 108, cert denied, ___ U.S. ___, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007); State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). The post-conviction proceeding allows the trial court to conduct a full evidentiary hearing, if one is warranted. State v. Leger, supra; State v. Howard, 98-0064 (La.4/23/99), 751 So.2d 783, cert. denied, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999). However, where the record contains evidence sufficient to decide the issue, and the issue is raised on appeal by an assignment of error, the issue may be considered in the interest of judicial economy. State v. Leger, supra; State v. Willars, 27,394 (La. App.2d Cir.9/27/95), 661 So.2d 673.
We find that the record on appeal is sufficient to decide the defendant's claim of ineffective assistance of counsel. The defendant points to various instances in which he informed the trial court pretrial of deficiencies in appointed counsel's performance, which he claims the court failed to address. Moreover, since the ineffective assistance claim overlaps with the claim of conflict of interest, we will address these issues together.
Under the standard for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Louisiana Supreme Court in State v. Washington, 491 So.2d 1337 (La.1986), a reviewing court must reverse a conviction if the defendant establishes: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.
With regard to the element requiring a showing of prejudice, this element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La. App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim: general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1067.
The assessment of an attorney's performance requires that his conduct be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to a trial counsel's judgment, tactical decisions and trial strategy. There is a strong presumption that trial counsel has exercised reasonable professional judgment. State v. Tilmon, 38,003 (La.App.2d Cir.4/14/04), 870 So.2d 607, writ denied, 2004-2011 (La.12/17/04), 888 So.2d 866.
A review of the record reveals that on the morning of trial, the defendant requested that he be appointed another attorney because his attorney was "ineffective" because she had not adequately conferred with him.[3] The defendant *784 first represented to the court that the morning of trial was the first time he had seen his counsel. The defendant later admitted that defense counsel had been to the correctional center to confer with him, but she had not shown him any "motions or anything pertaining to [his] case." Defense counsel and the district attorney then informed the court of some of the negotiations that had taken place with regard to the defendant's case. They indicated that some of the previous charges against the defendant had been reduced as a result of defense counsel's actions. The defendant then responded, "I just want to say, state for the record, as far as the two charges being dropped, I didn't know nothing about it till [sic] now." The court then denied the defendant's request to dismiss counsel.
The following day, the defendant informed the trial court that he did not want his counsel to continue to represent him because she was married to an assistant district attorney who worked for the district attorney, who was once his defense counsel in two unrelated matters. The trial court again denied the defendant's request to dismiss counsel.
In his brief to this court, the defendant contends his defense counsel was ineffective because she failed to call his co-defendants, who had all pleaded guilty to aggravated escape, to testify on his behalf. According to the defendant, the testimony of his co-defendants could have established that the escape was not pre-planned and could have discredited the deputies' version of the facts.
Based on our review of the record, since the defendant did not deny spraying the deputies with the pepper spray and escaping from jail, it is obvious that defense counsel's trial strategy was aimed at avoiding a conviction for aggravated battery and aggravated escape. The defense centered around the contention that the escape was not under circumstances where human life was endangered and no dangerous weapon was used.
We find no abuse of the trial court's discretion in failing to remove the defendant's appointed trial counsel. Prior to trial, defense counsel objected to the original charges, resulting in the elimination of some of the charges against the defendant. During the trial, defense counsel made objections and cross-examined witnesses. Following the trial, defense counsel filed a motion for post-verdict judgment of acquittal, a timely motion to reconsider sentence and motion for appeal.
Although the defendant did not agree with his counsel's trial strategy, the record indicates that trial counsel was competent and that her actions did not prejudice the defendant or deprive him of a fair trial in any manner. Thus, we find that the defendant has failed to demonstrate that he was prejudiced by any perceived deficiencies in his trial counsel's performance. This assignment is therefore without merit.
Pro Se Assignment of Error  Excessive Sentence
The defendant further contends the sentences imposed are constitutionally excessive. According to the defendant, the trial court failed to state which LSA-C.Cr.P art. 894.1 considerations it took into account when imposing the sentences.
*785 The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, supra. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La. 1992); State v. Robinson, 40,983 (La. App.2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Woods, 41,420 (La.App.2d Cir.11/1/06), 942 So.2d 658, writs denied, 2006-2768, 2006-2781 (La.6/22/07), 959 So.2d 494; State v. Brisco, 33,179 (La. App.2d Cir.4/5/00), 756 So.2d 644, writ denied, XXXX-XXXX (La.5/25/01), 792 So.2d 749; State v. Grissom, 29,718 (La.App.2d Cir.8/20/97), 700 So.2d 541. Past records of drug offenses weigh heavily in the decision to uphold the imposition of maximum sentences. State v. Adams, 39,792 (La. App.2d Cir.6/29/05), 907 So.2d 844, writ denied, XXXX-XXXX (La.8/18/06), 935 So.2d 136; State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385.
As stated above, prior to imposing sentence, the trial court reviewed the defendant's extensive criminal history, which indicated that the defendant was a fourth felony offender. The defendant had multiple convictions for possession of marijuana. He had a prior conviction for attempted distribution of cocaine (sentenced to six years at hard labor) and two previous convictions for distribution of cocaine (sentenced to six years at hard labor on one and five years at hard labor on the other). At the time of sentencing, the defendant had other drug charges pending, and the state indicated its intent to file a multiple offender bill of information against him.
For the same reasons noted above, we find that the record is sufficient to support the sentences imposed. The sentences are not disproportionate to the offense, nor do they shock the sense of justice. This assignment lacks merit.
*786 Sentencing Delays
The defendant further argues that the trial court violated LSA-C.Cr.P. art. 873 by sentencing him without waiting 24 hours after the denial of his motion for post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821(A) provides:
The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post verdict judgment of acquittal must be made and disposed of before sentence.
LSA-C.Cr.P. art. 873 provides:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
In this case, the defendant was convicted on August 8, 2006 and was sentenced on November 6, 2006. Thus, the three day delay had clearly elapsed between the conviction and sentence. We find that the trial court did not err in imposing the sentence immediately after denying the motion for post-verdict judgment of acquittal. The 24-hour delay under LSA-C.Cr.P. art. 873 does not apply following a denial of a post-verdict judgment of acquittal. State v. Scott, 98-2642 (La.App. 4th Cir.2/16/00), 754 So.2d 1108, writ denied, XXXX-XXXX (La.9/29/00), 769 So.2d 1219. Article 821 only requires a motion for post-verdict judgment of acquittal to be "disposed of before sentence." LSA-C.Cr.P. art. 873 only requires the 24-hour sentencing delay for a motion for new trial or in arrest of judgment. This argument is without merit.

CONCLUSION
For the foregoing reasons, we affirm the defendant's convictions and sentences.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The deputies were not armed with firearms. Each of the deputies carried a can of pepper spray and a flashlight. Deputy Layfield also carried a metal extendable baton.
[2] LSA-R.S. 14:2(A)(3) provides, "Dangerous weapon" includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.
[3] The defendant also stated to the court that he had hired Peter Flowers to represent him. The trial court then listened to statements by the district attorney, who stated that he had been in contact with Mr. Flowers, who was representing the defendant on an unrelated matter, and Mr. Flowers had indicated that he did not intend to represent the defendant on the instant matter. The trial court reviewed a letter from Mr. Flowers to the defendant and concluded that Mr. Flowers did not represent the defendant in this case.