# STATE OF LOUISIANA
## COURT OF APPEAL

## KA 18-622

**STATE OF LOUISIANA**

**VERSUS**

**ELIJAH JAMES LATIQUE**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
15TH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NUMBER CR 155978
HONORABLE DAVID M. SMITH, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\***

**JONATHAN W. PERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Billy Howard Ezell, Van H. Kyzar, and Jonathan W. Perry, Judges.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

**Elijah James Latique**
**Thru Annette Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602**
**Pro Se Appellant:**
     **Elijah James Latique**

**Annette Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602**
**Counsel for Appellant:**
     **Elijah James Latique**


**Kenneth Hebert**
**Assistant District Attorney and**
**Keith Stutes**
**District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502**
**Attorneys for Appellee:**
     **State of Louisiana**

**PERRY, Judge.**

Defendant Elijah James Latique ("Defendant") appeals his jury convictions for possession of a firearm by a convicted felon, aggravated burglary, and attempted manslaughter, and the sentences the trial court imposed. We affirm Defendant's convictions and sentences, but we remand this matter to the trial court to more fully inform Defendant of the provisions of La.Code Crim.P. art. 930.8.

## FACTS

On the night of April 11, 2016, Robert Short ("Short") was working at his business, Busy Bee Towing, in Scott, Louisiana. While outside with a tow truck driver, he saw five men pass, then double back and pass again. Shortly thereafter, he saw Defendant pass on a bicycle, followed by another man. Later, he saw the pair returning.

After the tow truck driver left, Short went into his office, locked the door, and worked at his desk. The office door had a large translucent oval-shaped window and Short was able to see that Defendant and another man were trying to look through the door window. Short then armed himself with a handgun he kept in the office and called emergency services. With guns visible, the Defendant and the other man kicked open the front door, leaving foot prints on the door, and initially fled when they saw Short armed inside. However, as Short rushed toward the open door, Defendant ran back toward the office door and pointed his handgun at Short. Short shot Defendant just outside the office door, and both the offenders fled. When law enforcement responded, they found Defendant moaning and bleeding in the tow yard, Short had security cameras and was able to provide officers with surveillance footage of the confrontation.

## PROCEDURE AND TRIAL

On June 15, 2016, the State filed a bill of information charging Defendant with aggravated burglary, possession of a firearm by a convicted felon, and aggravated assault with a firearm. On July 27, 2016, the State filed an amended bill charging him with attempted first degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30, and reiterated the other two charges. Later on June 12, 2017, the State filed yet another amended bill of information, ultimately charging Defendant with three counts: Count 1, attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1; Count 2, possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1; and Count 3, aggravated burglary, a violation of La.R.S. 14:60.

On September 26, 2017, the parties selected a jury, and the case continued to trial. After hearing evidence on September 26 and 27, 2017, the jury deliberated and found Defendant guilty of a lesser-included offense, attempted manslaughter, on the first count, and guilty as charged on the other two counts.

On March 22, 2018, the trial court sentenced Defendant to fifteen years for attempted manslaughter, ten years and a $1,000 fine for possession of a firearm by a convicted felon, and twenty-five years at hard labor for aggravated burglary. The trial court imposed the sentences concurrent to each other, except for five years for Defendant's possession of a firearm as a prior convicted felon which was imposed consecutive to the other sentences.

Defendant, represented by appellate counsel, now seeks review by this court, assigning four errors: (1) The evidence introduced at the trial of this case, when viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979) standard, was insufficient to prove beyond a reasonable doubt that Defendant committed the

completed crime of aggravated burglary; (2) The evidence introduced at the trial of this case, when viewed under the *Jackson* standard, was insufficient to prove beyond a reasonable doubt that Defendant committed either attempted manslaughter or attempted second degree murder; (3) The trial court erred in returning the jury for further deliberation as to count one after the jury returned a verdict form which complied with the court's instructions and was lawful; and (4) The sentences imposed by the trial court violate the Eighth Amendment of the Constitution of the United States and La.Const. art. 1, § 20, as they are nothing more than cruel and unusual punishment and, thus, excessive.

In addition, Defendant has urged three additional pro se assignments of error: (1) All of the State's witnesses were present during voir dire examination; (2) Defendant's right to testify was erroneously forfeited; and (3) Defendant's right to testify was unknowingly, unintelligently, and involuntary waived.

## ERRORS PATENT REVIEW

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After carefully reviewing the record, we find one error patent.

The record shows the trial court advised Defendant at sentencing that he has "two years to file any post-conviction relief petitions that he may be entitled to."

Louisiana Code of Criminal Procedure Article 930.8 provides the defendant has two years *after the conviction and sentence become final* to seek post-conviction relief. Considering the specific provisions of La.Code Crim.P. art. 930.8, we find the trial court's advisement was insufficient because it failed to alert the Defendant that the two years commenced with the rendition of our opinion in this court. Therefore, we direct the trial court to inform the Defendant of the provisions of

La.Code Crim.P. art. 930.8 by sending written notice to the Defendant within ten days of the rendition of this opinion and to file written proof in the record that the Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## SUFFICIENCY OF EVIDENCE

In his first two assignments of error, Defendant argues the State's evidence was insufficient to support his convictions for aggravated burglary and attempted manslaughter. With regard to the aggravated burglary conviction, Defendant contends the State failed to prove he entered Short's office. As to the attempted manslaughter conviction, Defendant further contends the State failed to prove he had specific intent to kill Short, an essential element of the crime charged.

In *State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371, we articulated the well-established analysis for such claims:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

4

*Aggravated Burglary*

As applicable in the present case, the elements of aggravated burglary are found in La.R.S. 14:60(A)(1): "Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, under any of the following circumstances: (1) If the offender is armed with a dangerous weapon." Defendant argues the State failed to prove any part of his body passed the line of the threshold into Short's office.

In *State v. Bryant*, 12-233, pp 5-6 (La. 10/16/12), 101 So.3d 429, 432-433, the supreme court addressed the meaning of "entry" as contemplated in La.R.S. 14:60(A)(1):

> "Entry" is not statutorily defined in Louisiana. While this Court has never directly addressed the issue, our appellate courts have found "entry" for purposes of the crime of burglary whenever any part of the defendant's body passes the line of the threshold. *See*, *State v. Abrams*, 527 So.2d 1057, 1059 (La.App. 1st Cir.1988) ("it is sufficient if any part of the actor's person intrudes, even momentarily, into the structure"); *State v. Hogan*, 33,077 (La.App. 2 Cir. 3/1/00), 753 So.2d 965, 967; *State v. Jefferson*, 33,333 (La.App. 2 Cir. 5/10/00), 759 So.2d 1016, 1019. The term has also been uniformly defined in criminal law treatises. *Wharton's* provides:

> > There is entry when any part of the defendant's person passes the line of the threshold. Thus, there is an entry when the defendant, after opening a closed door, steps across the threshold; when, after breaking the glass of a door or window, he reaches inside to unlock the door or window or to steal property; when in the course of breaking the glass of a door or window, his finger, hand, or foot happens to pass through the opening; or when, in the course of pushing open a closed door or raising a closed window, his finger or hand happens to pass the line of the threshold or to pass through the opening.

> 3 Wharton's Criminal Law, § 322, pp. 247-48 (15th ed.1995, Charles E. Torcia, ed.); *see also* W.R. LaFave, A.W. Scott, 2 Substantive Criminal Law § 8.13, p. 467 (1986) ("It is sufficient if any part of the actor's person intrudes, even momentarily, into the structure. Thus,

the momentary intrusion of part of a foot in kicking out a window, constitutes the requisite entry.")

High courts in other jurisdictions have defined entry similarly, consistently holding that a "slight entry," consisting of any part of the actor's body crossing the plane, is sufficient. *See*, *People v. Beauchamp*, 241 Ill.2d 1, 348 Ill.Dec. 366, 944 N.E.2d 319, 324 (2011); *State v. Keopasaeuth*, 645 N.W.2d 637 (Iowa 2002); *State v. Gutierrez*, 285 Kan. 332, 172 P.3d 18, 23 (2007); *State v. Crossman*, 790 A.2d 603, 606 (Me.2002); *Hebron v. State*, 331 Md. 219, 627 A.2d 1029 (1993); *State v. Fernandes*, 783 A.2d 913, 917 (R.I.2001); *Rowland v. Com.*, 281 Va. 396, 707 S.E.2d 331, 333 (2011). We agree with the universal definition given to the term "entry," and hold as a matter of law that an "entry" for purposes of the crime of burglary occurs when any part of the intruder's person crosses the plane of the threshold.

Initially, Short testified that the men "fell in" after they kicked open the door. Defendant argues that no part of his body crossed the threshold of the front door, only the barrel of his gun extended into the office.

The State presented evidence to the jury of Defendant's entry into the Busy Bee Towing office by two means: a contemporaneous security video of the entry and Short's direct testimony. We have carefully viewed the video and observe that although the camera was mounted on a post aimed at the front door, it is somewhat difficult to determine to what extent Defendant's hand or arm protruded into Short's office. Nonetheless, the video clearly shows Defendant's right foot and leg crossed the threshold of the door as he kicked it. Despite Defendant's contention that his hand did not cross the threshold, Short, who was off to one side of the entry door, unequivocally testified Defendant's and the other offenders' "hands were in the building." Juries are not required to abandon common sense and life experiences when they enter a jury room. *State v. Blazio*, 09-851 (La.App. 5 Cir. 6/29/10), 44 So.3d 725, *writ denied*, 10-1781 (La. 2/4/11), 57 So.3d 310. Having viewed the contemporaneous crime scene video and read Short's testimony about his placement

6

in relation to the door location, we find the record fully supports the jury's factual determination Defendant entered Short's office.

Considering the video evidence and Short's testimony, when viewed in light of *Bryant* and after viewing the evidence in the light most favorable to the prosecution, we find the State proved every element of the crime of aggravated burglary. Therefore, Defendant's first assignment of error lacks merit.

*Specific Intent: Attempted Manslaughter*

Defendant's next argument is that the State failed to prove he had specific intent to kill and thus prove that he committed attempted manslaughter. In making this argument, Defendant rests his contention on three arguments: (1) Short's testimony was inconsistent; (2) the testimony of Detective Caleb Lege ("Detective Lege") of the Scott Police Department was also inconsistent; and (3) the physical evidence shows that no round was chambered in the weapon and thus contradicts Short's testimony that Defendant pulled the trigger of the weapon.

Attempt is defined by La.R.S. 14:27, which states in pertinent part:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Manslaughter is defined, in pertinent part, by La.R.S. 14:31:

> (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
>
> (2) A homicide committed, without any intent to cause death or great bodily harm.

7

(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person[.]

The record shows the State originally charged Defendant with attempted first degree murder and later amended the bill of information to attempted second degree murder; thus, the verdict at issue is for a lesser-included offense, attempted manslaughter. A jury may return any legislatively provided responsive verdict, if the evidence sufficiently supports a conviction of the originally-charged offense. *State ex rel. Elaire v. Blackburn*, 424 So.2d 246 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983); *State v. Sepulvado*, 10-435 (La.App. 3 Cir. 3/9/11), 59 So.3d 463, *writ denied*, 11-1151 (La. 11/14/11), 75 So.3d 941; *see* La.Code Crim.P. art. 814. Further, specific intent to kill is an element of both attempted first and second degree murder as well as attempted manslaughter. La.R.S. 14:40, La.R.S. 14:30.1, La.R.S. 14:31; *State v. Stafford*, 17-714 (La.App. 3 Cir. 3/7/18), 241 So.3d 1060, *writ denied*, 18-549 (La. 11/20/18), 256 So.3d 997.

Defendant argues the State failed to prove that he had the specific intent to kill Short. As the record shows, Short testified that Defendant pointed a pistol at him and pulled the trigger. Defendant acknowledges in brief that pointing a firearm at another person and pulling the trigger is evidence of specific intent to kill, but he attacks Short's credibility. However, Defendant argues that Short's original statement to police did not mention that Defendant pulled the trigger. He also points out that Short's memory of the timeline of events did not match that of the officers who responded to the scene.

From the outset, we find that Short's incorrect temporal perception or memory of the relevant events is not fatal to the State's case. Although the victim

8

testified the relevant events took place at about midnight, the responding officers testified they were called out to the scene at about 2:00 a.m. Nonetheless, it is clear from the video evidence that the incident occurred generally as Short described it in his testimony.

Moreover, we have carefully viewed the security footage. Although the video evidence may not definitively show that Defendant pulled the trigger, it does clearly show Defendant retreated and then rushed back to the office door, stopped in the doorway, and pointed his pistol at Short, who was standing just feet away. As to whether Defendant pulled the trigger, Short's testimony is that Defendant not only pointed the weapon, he also pulled the trigger of the weapon. "It is well-settled that a jury is free to believe some, none, or all of any witness's testimony." *State v. Perkins*, 11-955, p. 10 (La.App. 3 Cir. 3/7/12), 85 So.3d 810, 817.

In addition to Short's victim testimony, the jury also heard Detective Lege's investigative testimony regarding the recovery of the Defendant's weapon at the scene. On cross-examination Detective Lege testified that Defendant's gun had not been fired. However, later Detective Lege told the jury that his earlier testimony did not mean the trigger had not been pulled. To the contrary, he said when the gun was taken into police custody and examined, the trigger mechanism indicated the trigger had been pulled.

Lastly, we now turn to Defendant's argument that physical evidence of the absence of a chambered-round in the gun contradicts the testimonies of Short and Detective Lege that Defendant pulled the trigger. The record does show that Detective Lege testified that there was not a round in the chamber when police recovered the Defendant's weapon. Without engaging in speculation regarding Defendant's knowledge of how to operate firearms, the record reflects that the jury

9

was presented with evidence that Defendant's actions indicate that he thought he had a weapon ready to fire and tried to shoot Short with it.

The *Jackson* standard of review is highly deferential to the fact finder as it "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. It was up to the jury, not us as a reviewing court, to determine fact questions, such as whether the Defendant pointed a pistol at the victim and pulled the trigger. We, as a reviewing court, should not second-guess that determination. Considering the totality of the evidence and viewing that evidence most favorably to the prosecution, we find the record reflects that the State has satisfied its burden of proving the elements of the crime of attempted manslaughter beyond a reasonable doubt. Therefore, this assignment of error lacks merit.

## THE VERDICT FORM

In his third assignment of error, Defendant argues the trial court erred when it sent the jury back to clarify the jury form. He argues that the first verdict form returned a verdict of not guilty which conformed with the trial court's instructions. Arguing that the first verdict was legal, Defendant contends the trial court should have accepted it.

Our review of the record shows that after being properly instructed on the completion of the verdict form, the jury returned a verdict form that said, "as to Count 1: Not Guilty" and then on the blank line between Count 1 and Count 2, the jury handwrote "Guilty of Attempted Manslaughter." Finding it unclear what the jury verdict was as to Count 1 and after discussion with the attorneys, the trial court filed the verdict form under seal. It then addressed the jury about Count 1:

10

I sent you back . . . so that your jury verdict form would conform to instructions that I gave you. At this point what I will do is I will read those instructions again that are applicable to the filling out of that jury instruction form.

. . . .

If you are convinced beyond a reasonable doubt that the defendant is guilty of attempted second degree murder, your verdict should be guilty.

If you are not convinced that the defendant is guilty of attempted second degree murder but you are convinced beyond a reasonable doubt that the defendant is guilty of attempted manslaughter, the form of your verdict should be Guilty of attempted manslaughter.

If you are not convinced that the defendant is guilty of second degree murder but you are convinced beyond a reasonable doubt that the defendant is guilty of aggravated battery, the form of your verdict should be Guilty of aggravated battery.

If you are not convinced that the defendant is guilty of attempted second degree murder but you are convinced beyond a reasonable doubt that the defendant is guilty of aggravated assault with a firearm, the form of your verdict should be Guilty of aggravated assault with a firearm.

If the State has failed to prove beyond a reasonable doubt that the defendant is guilty of either the offense charged or the lesser responsive offense, the form of your verdict should be Not guilty.

After the trial court re-instructed the jury,[1] it remanded the jury for further deliberation in conformity with its instructions. After re-deliberation, the jury returned the second jury form that said "guilty of attempted manslaughter" as to Count 1.

Louisiana Code of Criminal Procedure Article 809 states: "After charging the jury, the judge shall give the jury a written list of the verdicts responsive to each offense charged, with each separately stated. The list shall be taken into the jury

---

[1] Prior to the trial court's jury re-instruction, the trial court denied Defendant's motion for a mistrial.

11

room for use by the jury during its deliberation." Louisiana Code of Criminal Procedure Article 810, in pertinent part, further states:

> When a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall sign it. There shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury.

As an ancillary to La.Code Crim.P. art. 810, La.Code Crim.P. art. 813 states:

> If the court finds that the verdict is incorrect in form or is not responsive to the indictment, it shall refuse to receive it, and shall remand the jury with the necessary oral instructions. In such a case the court shall read the verdict, and record the reasons for refusal.

In conformity with La.Code Crim.P. art. 813, the trial court in the present case stated:

> The original jury verdict form that came in, I placed it under seal. That one said, "Count 1, attempted second degree murder. We the jury find the defendant not guilty."

> And then on the second line guilty attempted manslaughter. Count 2 felony possession of a firearm, we find the defendant guilty. Count 3, aggravated burglary, we find the defendant guilty. And then they had signed and dated it.

> The original count 1 when it refers to attempted second degree murder is not in conformity with my instructions. They did not find that he was – that the case was proven beyond a reasonable doubt. They were instructed to find him guilty of either a lesser and included responsive charge or not guilty. By actually putting "We find the defendant guilty of" whatever, exactly like I had read into the record. That's not what it did. It came out and said not guilty and then guilty of something.

> In an abundance of caution my reading, even though we all have a feeling of what this should be read, it says: Not guilty, guilty of attempted manslaughter.

> So I didn't want to interpret what the jury was finding. So, therefore, I found it not in conformity with the requirements of the jury charge.

12

As the trial court explained, the first jury verdict clearly was "incorrect in form" under La.Code Crim.P. arts. 810 and 813. Simply stated, the first jury verdict did not clearly convey the jury's intention. In accordance with La.Code Crim.P. art. 813, the trial court properly refused to receive the first verdict, properly re-instructed the jury, and properly returned the jury for further deliberation with a new verdict form. In the present case, the trial court neither suggested what the verdict should be nor implied that the first verdict was incorrect other than as to its form. To the contrary, the trial court simply told the jury, "I sent you back . . . so that your jury verdict form would conform to instructions that I gave you." *See State v. Tart*, 93-0772 (La. 2/9/96), 672 So.2d 116, cert denied, 519 U.S., 1035, 117 S.Ct. 600 (1996); *State v. Ellis*, 13-1401 (La.App. 4 Cir. 2/4/15), 161 So.3d 64, *writ denied*, 15-489 (La. 1/15/16), 184 So.3d 704.

For the foregoing reasons, we find the trial court acted as La.Code Crim P. art. 813 required and it made no effort to influence the jury verdict. Therefore, this assignment of error lacks merit.

### EXCESSIVENESS OF SENTENCE

In his final counsel-filed assignment of error, Defendant argues that his sentence is excessive. Our review of the record shows that Defendant, both pro se and through counsel, filed motions to reconsider sentence in the trial court. In Defendant's motion for reconsideration, he alleged that the trial court did not take into account "all of the mitigating factors available" but did not specify which factor or factors in mitigation were not considered. The same is true in Defendant's pro se motion, specific reasons are not stated. Thus, Defendant's argument constitutes a bare claim of excessiveness.

13

Under *State v. Mims*, 619 So.2d 1059 (La.1993), when a Defendant's motion to reconsider sentence merely alleges that the sentence is excessive, he is "simply relegated to having the appellate court consider the bare claim of excessiveness." *Id.* at 1060. This bare assertion preserves only a claim of constitutional excessiveness. *Id.*; *State v. McEachern*, 624 So.2d 43 (La.App. 2 Cir. 1993).

The analysis for a bare claim of excessiveness is well-settled:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983) ), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958[, *cert. denied*, 96-6329, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996) ].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261 (first alteration in original).

For the aggravated burglary, the trial court sentenced Defendant to twenty-five years at hard labor; the sentencing range is one to thirty years, pursuant to La.R.S. 14:60(B). For attempted manslaughter, the trial court sentenced Defendant to fifteen years, to run concurrently with the aggravated burglary sentence. The potential maximum sentence for attempted manslaughter is twenty years, pursuant to La.R.S. 14:27(D)(3) and La.R.S. 14:31(B). For possession of a firearm by a convicted felon, the trial court sentenced Defendant to ten years at hard labor, with five years to run concurrently with the aggravated burglary and five years to run consecutively. The sentencing range for the firearm offense was ten to twenty years pursuant to La.R.S. 14:95.1(B).[2] The trial court held a hearing regarding possible reconsideration of the sentences and affirmed the sentences.

The trial court gave the following reasons for its sentencing choice:

> THE COURT: I have looked at the aggravating and the mitigating factors. And up until today, what we have seen from Mr. Latique is that he was not remorseful. He was still claiming to be the victim and he was saying it wasn't him, even though the video was clear

---

[2] This was the sentencing range at the time the offense was committed. By Acts 2017, No. 281 § 1, the legislature changed the sentencing range.

and he was the individual who had gotten shot upon entering the business.

But I will give him some consideration for his act of remorse today, as well as the consideration, some mitigated, for the family unit that was involved in the person who his wife testified him to be. [sic] Despite that, I have a list of aggravating factors, including a previous history of prior felonies, of guns being used, him being on parole, the lack of remorse up until today. And the fact that he left, basically, the scene where the incident happened and then he came back and pointed the gun at the victim where there was testimony of him pulling the trigger.

I also note the lack of his prior aggravating crimes. With that being said, -- or crimes of violence, I should say. With that being said, I think the appropriate sentence, the gun, the third felony conviction and everything, on the aggravated burglary the top of the sentence is hard labor not less than one nor more than thirty years.

I think the appropriate sentence on that for Mr. Latique would be 25 years.

On the manslaughter, it's hard labor not more than twenty because he was convicted of an attempted manslaughter. So, with that, I think the appropriate sentence is fifteen years. That will run concurrent with the aggravated burglary.

On the convicted felon in possession of a firearm, not less than ten nor more than twenty without benefit of probation, parole, or suspension of sentence, and fine of not less than $1,000 nor more than $5,000, there will be $1,000 fine. But on the sentence part, it will be ten years hard labor without benefit of probation, parole, or suspension of sentence. Five to run concurrent with the aggravated burglary, and five to run consecutive to the aggravated burglary.

Our review of the trial court's detailed, particularized reasons shows that the Defendant was a repeat felon. Further, the seriousness of Defendant's offenses is reflected in the record. Although our research has found no case with sentences for this conglomeration of offenses similar to the one now before us, as for a comparison to sentences for similar individual offenses, this court has upheld a twenty-five-year sentence for aggravated burglary for a defendant who was a prior felon. *State v. Tolliver*, 12-1355 (La.App. 3 Cir. 5/8/13), 157 So.3d 674. Also, this court has upheld

16

a twenty-year sentence for attempted manslaughter. *State v. Benoit,* 16-129 (La.App. 3 Cir. 6/1/16), 195 So.3d 668. And this court has upheld a ten-year sentence for possession of a firearm by a convicted felon. *State v. Johnson*, 09-862 (La.App. 3 Cir. 2/3/10), 28 So.3d 1263. After reviewing this case law together, it is clear the trial court's sentencing scheme does not fall outside the norm of Louisiana jurisprudence. Further, in light of the sentencing factors set forth in *Soileau*, 153 So.3d 1002, we find this assignment is without merit.

Notwithstanding, Defendant takes issue with the trial court's decision to impose half of the sentence for illegal possession of a firearm consecutive to the other offenses.

Louisiana Code of Criminal Procedure Article 883 provides in pertinent part: "If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively." The jurisprudence has concluded that "[a] judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record." *State v. Harris*, 42,376, p. 10 (La.App. 2 Cir. 9/26/07), 966 So.2d 773, 781–82, *writ denied*, 07-2109 (La. 3/28/08), 978 So.2d 304. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. *State v. Boudreaux*, 41,660 (La.App. 2 Cir. 12/13/06), 945 So.2d 898, *writ denied*, 07-58 (La. 11/2/07), 966 So.2d 591; *State v. Mitchell*, 37,916 (La.App. 2 Cir. 3/3/04), 869 So.2d 276, *writ denied*, 04-0797 (La. 9/24/04), 882 So.2d 1168, *cert. denied*, 543 U.S. 1068 (2005). However, the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate

factual basis to support consecutive sentences. *State v. Boudreaux,*945 So.2d 898;

*State v. Hampton*, 38,017, 38,022 (La.App. 2 Cir. 1/28/04), 865 So.2d 284, *writs*

*denied*, 04-0834 (La. 3/11/05), 896 So.2d 57, 04-2380 (La. 6/3/05), 903 So.2d 452.

Although the trial court may not have particularized these factors when announcing its decision to make half of the sentence for illegal possession of a firearm consecutive, earlier in its articulated reasons for sentence the trial court noted Defendant's previous history of prior felonies, of guns being used, and that he was on parole when he committed the offenses for which he was convicted. Those factors and the record provide more than an adequate factual basis to support the trial court's limited use of consecutive sentencing.

Finally, Defendant argues that his use of a firearm should not have been viewed as an aggravating factor in sentencing, as it was an element of two of the offenses. Notwithstanding Defendant's assertion, when we review the totality of the trial court's reasons for sentencing, it becomes apparent to us that Defendant's possession of the weapon was clearly overshadowed by the trial court's concern with the danger that weapon posed to the victim as an aggravating factor. Therefore, we find the Defendant's assignment of error lacks merit.

### WITNESS PRESENCE DURING VOIR DIRE
### (PRO SE ASSIGNMENT OF ERROR NO. 1)

In his first pro se assignment of error, Defendant complains that the State's trial witnesses were present during voir dire. Specifically, he contends that the presence of the witnesses unduly influenced the prospective jurors. In support of his argument, Defendant, relying on *State v. Johnson*, 438 So.2d 1091 (La.1983), contends that, pursuant to former La.Code Crim.P. art. 764,[3] sequestration is

---

[3]The right of sequestration is now governed by La.Code Evid. art. 615(A), which states:

available during voir dire. Nevertheless, Defendant acknowledges that he did not move for sequestration in the present case. Indeed, our review of the record indicates that Defendant did not move for sequestration until the jury was about to hear evidence. In the absence of a motion for sequestration, we find Defendant did not preserve this issue for appellate review. *State v. Cowden,* 04-707 (La.App. 5 Cir. 11/30/04), 889 So.2d 1075, *writ denied*, 04-3201 (La. 4/8/05), 899 So.2d 2.

For this reason, this assignment of error lacks merit.

## DEFENDANT'S RIGHT TO TESTIFY
### (PRO SE ASSIGNMENT OF ERROR NO. 2)

In his second pro se assignment of error, Defendant argues his "right to testify was erroneously forfeited." He acknowledges that the record shows he waived his right to testify but complains the waiver was not memorialized until after the defense rested. He cites *State v. Coleman*, 14-402 (La. 2/26/16), 188 So.3d 174, *cert. denied*, ___ U.S. ___, 137 S.Ct. 153 (2016), for the proposition that any protest by him after his counsel rested would have been untimely. Further, he states, "Appellant could not have testified on his own behalf once his counsel rested the case. . . . What would the trial judge have done if this Appellant objected to waiving his right to testify?" Our review of the transcript shows that the reason Defendant's question cannot be answered rests squarely on his own shoulders. On the record, Defendant acknowledged not only waiver of the right but also that he had previously advised

---

On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.

This language is similar to that of former La.Code Crim.P. art. 764.

his counsel of his wish, including an instance approximately fifteen minutes before the colloquy in the record. Thus, this assignment lacks merit.

## DEFENDANT'S COMPELLED SILENCE
### (PRO SE ASSIGNMENT OF ERROR NO. 3)

In his third and final pro se assignment of error, Defendant contends that his trial counsel compelled him to remain silent. Defendant alleges that during a meeting with him and his wife, defense counsel coerced him to agree to waive his right to testify by brandishing, cocking, and uncocking a pistol. Accordingly, Defendant, relying on *State v. Dauzart*, 99-3471 (La. 10/30/00), 769 So.2d 1206, and *State v. Hampton*, 00-522 (La. 3/22/02), 818 So.2d 720, argues that if his right to testify was violated, his convictions and sentences must be set aside.

Despite Defendant's contention, it is obvious that the alleged encounter involving trial counsel, Defendant, and Defendant's wife happened outside the record. It is well-settled that appellate courts have no authority to review facts not contained in the trial court record. See *State v. Waguespack*, 589 So.2d 1079 (La.App. 1 Cir. 1991), *writ denied*, 596 So.2d 209 (La. 1992); *State v. Swan*, 544 So.2d 1204 (La.App. 1 Cir. 1989). Thus, we pretermit discussion of this issue as we have no record of this alleged encounter to review.

## DISPOSITION

We affirm Defendant's convictions and sentences. We direct the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending written notice to the Defendant within ten days of the rendition of this opinion and to file written proof in the record that the Defendant received the notice.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**